### WRIGHT, Adm'r. Etc. v. CAMPBELL & STRONG.

EQUITY PLEADING—*Demurrer for want of parties, etc.*—The mere fact that a party, at the time of the execution of a deed of trust, was insolvent, or largely indebted to *certain* creditors, does not, of itself, show that other parties may be interested in the result of a suit to set aside such conveyance, so as to render a bill for that purpose demurrable for the want of proper parties.

SAME—*To enforce creditor's demand allowed in Probate Court, etc.*—A demand allowed, classified and adjudged by the Probate Court to be a claim against an estate, has the same force and effect of a judgment, and, in such case, it is not a pre-requisite, as under the general rule, that a creditor having such demand, and seeking the interposition of a court of equity to set aside a deed, should show an execution issued and return of *nulla bona.*

EXECUTORS, ETC.—*Cannot purchase property of testator, etc.*—An executor or administrator cannot buy any part of the estate of his testator or intestate; as, in equity, he is held to be a trustee for the next of kin, legatees and creditors, and has no right to become the purchaser of the property he represents.

APPEAL FROM JEFFERSON CIRCUIT COURT.

HON. HENRY B. MORSE, *Circuit Judge.*

*A. H. Garland,* for Appellant.

We submit the demurrer was well taken. The bill shows on its face that there are other creditors beside the complainants, and the rule, in equity, is that all persons interested should be made parties: *Story Eq. Pl. (Redfield's Ed.)* 76 *et*

*seq.; Note* 2 *top page* 77. Where the parties are not known it must be so charged in the bill: *Ib.*, 99.

The fourth cause of demurrer is fatal, and not amendable. The complainants in their bill, by their own showing, have not exhausted their remedy and proceeding at law, which must be done before a Court of Chancery will interpose.

To contest the validity of a deed, the creditors must have obtained judgment and execution: 2 *Bibb.*, 416 ; 3 *Littell*, 13 ; 1 *Monroe*, 106; *Ib.*, 233; 5 *J. J. Marshall*, 87; 6 *Id.*, 83; 7 *Dana*, 496 ; 11 *Ark.*, 40 ; 11 *Ark.*, 718; 12 *Ark.*, 387; 4 *Johns. Ch.* 671; 4 *Id.*, 682-687; 2 *Id.*, 295-144; *Ark. Code p.* 143, *Sec.* 473. Mrs. Wright was administratrix of the estate, and the law forbade her purchasing the land for herself. As administratix, she was trustee for the heirs and creditors: 4 *How.*, (*U. S.*) 552 *et seq.*; 7 *Ark.* 520. The law positively forbade her dealing with the estate for her benefit: 2 *Spence Eq.*, 299 ; *Adams' Eq.*, 59-60; *Williard's Eq.*, 604-606; *Fonb. Eq.*, 445, *book second, Sec.* 7 ; 4 *Kent*, 438. Executors cannot use assets and retain profits: 4 *How.* (*U. S.*) 552; 12 *Ind.*, 266; *Hump. C. C. Reps.*, 225-251; 11 *Foster* (*N. H.*) 70; 29 *Penn.*, 64; 26 *Id.*, 67 ; 27 *Ala.*, 62; 5 *McLean*, 4 ; 1 *Stock* (*N. J.*) 218.

*Bell & Carlton,* for Appellees.

BENNETT, J.—On the 12th day of October, 1869, Campbell & Strong filed their bill of complaint in the Jefferson County Circuit Court to cancel a deed made by Elizabeth W. Wright to Garland H. Dorris, in trust for the benefit of her minor child, James W. Wright. The deed conveyed lands, and charged, in the complaint, to have been voluntary, and the consideration was love and affection merely. Campbell & Strong are creditors of Elizabeth W. Wright, who died in the year 1865. Their claim has been duly presented to the defendant, Hartwell T. Wright, as administrator of Elizabeth W. Wright, deceased, and the same allowed and duly classified in the Probate Court of Jefferson county. It is charged, in the complaint, that the estate of Elizabeth W. Wright de-

ceased, is wholly and totally insolvent, and it would be unnecessary and useless expense to proceed further against said administrator to make complainants' debt. It is also charged, in the complaint, that Elizabeth W. Wright was largely indebted at the time she made said deed of trust, and was at that time insolvent.

The insolvency of Elizabeth W. Wright, as charged, is admitted by all the defendants, in their answer, to be true. The making of the trust deed, and the consideration for the same, as alleged, are also admitted to be true. The defendants, however, say in their answer that the lands conveyed by the said trust deed were not the lands of the said Elizabeth W. Wright, but belonged to the estate of Joseph J. Wright, deceased, the husband of the said Elizabeth W. And the defendants say, in their answers, that Elizabeth W. Wright had no authority to make said deed of trust, and the same was a fraud upon the rights of the defendants, Hartwell T., Mary S. and Joseph Wright, children and heirs at law of said Joseph J. Wright. The defendants also expressly say and charge in their answers that the pretended claim of Elizabeth W. Wright to said lands was bought and procured by her when she was the administratrix of Joseph J. Wright, deceased, and with the money and credits of said estate, and with nothing else, and her purchase of said lands, each and all of them, inured to the benefit of the estate of Joseph J. Wright, and that she held them in trust for said estate, and that said lands belong to defendants, the heirs of said estate.

The answer of the defendant, Joseph Wright, in addition to the defendants' claim, as heirs of Joseph J. Wright, deceased, also sets up and asserts a tax title to said land, by virtue of a purchase made by Thomas S. James, at a tax sale on the 2d of March, 1868, who afterward assigned and transferred, in due form of law, his certificate of purchase to said Joseph Wright, who afterward obtained a tax deed, as provided by law.

The complainants, replying to this allegation of the answer,

state and charge that Thomas S. James was, at the time of said tax sale, the attorney of the estate of Elizabeth W. Wright, deceased, and had been acting as attorney for her estate for some time previous to said tax sale, and that said Thomas S. James did declare, at the time of his said purchase at the tax sale, that he was purchasing the same for the benefit of the estate of Elizabeth W. Wright, deceased, and for the purpose of defeating the mortgage of the Real Estate Bank upon the lands, and requested persons present not to bid against him on that account; all of which was known to Joseph Wright. For this reason the complainants, in their reply, say that this purchase by James, at the tax sale, was *fraudulent* and *void.*

A demurrer to the bill was filed in all the answers.

The record does not show what disposition was made of the demurrers, but we shall treat them as though they were over-ruled by the court below. The demurrers are general, but the counsel for defendants insist that the bill is defective :

*First.* For want of proper parties to it.

*Second.* Because it does not disclose any grounds for equitable relief.

This is a bill brought by Campbell & Strong to cancel a a deed made by Elizabeth W. Wright to her minor son, and to subject the land conveyed to the payment of their debt. It alleges that at the time of the conveyance, she was largely indebted, as much as thirty thousand dollars, and that she was insolvent and wholly unable to pay her debts. It also alleges that her estate is insolvent, and that they have no other means by which they can make their debt. These are the only allegations that can, by expression or implication, raise the presumption that there may be other creditors or parties interested in this suit.

The fact that the estate is insolvent does not show that other parties may be interested in the result of the suit, because the insolvency may arise from inability to pay the debt of Campbell & Strong alone. Nor does the fact that Eliza-

beth W. Wright, herself, was insolvent at the time of the execution of the trust deed, and that her indebtedness was thirty thousand dollars at that time. Because, if she was owing other parties than Campbell & Strong, at that time, that indebtedness may have been liquidated since, and they may be the sole creditors of the estate.

As to the want of equity. The defendants insist that before a court of equity will interpose to try the validity of a deed, a creditor, seeking to set it aside, must present to the court a judgment of a court upon his demand upon which an execution has been issued and it returned *nulla bona*; or if the creditor would avoid the force of this rule, he must show such equitable circumstances as will relieve him from its application, so as to make his case an exception: *Meux vs. Anthony et al.*, 11 *Ark.*, 411.

Conceding the above to be the correct doctrine, have not the plaintiffs brought themselves within it? The record shows that the claim of Campbell & Strong was allowed by the administrator of the estate of Elizabeth W. Wright, and that the Probate Court has allowed and classified it, and ordered and adjudged that the same stand as a claim against the estate. This order of the Probate Court has the same force and effect as a judgment: *Chap. 4, Sec. 115, Gould's Digest; Cositt et al. vs. Biscoe*, 12 *Ark.*, 95; *McMorrin, adm'r. vs. Overholt*, 14 *Ark.*, 244. Should execution have been issued on it? It has been held in the case of *Adamson et al. vs. Cummins, ad.*, 10 *Ark.*, 541, that "a judgment obtained in the Circuit Court against an administrator, as such, cannot be executed until the estate is settled in the Probate Court; but an execution on such judgment, before it is ascertained that there are assets to pay it, is irregular." The same doctrine has been maintained in the case of *Horner, as Trustee, vs. Hanks et al.*, 22 *Ark.*, 585.

If an execution, upon a judgment obtained in the Circuit Court, cannot be enforced against an estate, we can see no reason why it would be necessary for a creditor to proceed

41

to obtain an execution in the Probate Court, after he has had his claim allowed and classified. After this has been done, the administrator is obliged to pay such claims from the assets of the estate; an execution could accomplish no more. If the allegations of the bill are true, the complainants are entitled to relief. The demurrers were properly overruled.

In determining the rights of the parties in this cause, as presented by the bill, answer, exhibits and proofs, it becomes necessary to prosecute three inquiries:

*First.* Was the estate of Elizabeth W. Wright in these lands impaired by reason of the tax purchase and tax deed of Thomas S. James and Joseph Wright?

*Second.* Was the deed of trust executed to Garland H. Dorris by Elizabeth W. Wright null and void as against the creditors of said Elizabeth W.?

*Third.* Did the purchase of these lands made by Elizabeth W. Wright, in 1857, of the trustees of the Real Estate Bank, and of the heirs of Wood Tucker, inure to her individual benefit, or was she but the trustee for the estate of Joseph J. Wright in the purchase?

As to the first inquiry. The separate answer of the defendant, Joseph Wright, states that the lands in controversy were assessed for taxation in the year 1869, in the name of Garland H. Dorris, trustee. The taxes, costs and penalty remaining wholly due and unpaid, in due time, and in accordance with law, they were offered for sale, at which sale, Thomas S. James bid the same off for the taxes, etc., and he received a certificate of purchase from the collector, which certificate was afterward endorsed and transferred to him, and afterward he obtained a tax deed, duly executed and acknowledged, and, by virtue of this deed, he claims that the title to said lands, in law and equity, is vested absolutely in him. The deed is exhibited.

The answer of the complainant to this cross bill admits the tax sale and purchase by James, but charges that said James was, at the time of said sale and purchase, the attorney for

the estate of Elizabeth W. Wright, deceased, and had been acting in that capacity for some time previously, and that at the time of purchase of the lands at tax sale, did declare that he was purchasing them for the benefit of the estate of Elizabeth W. Wright, and for the purpose of defeating the mortgage of the Real Estate Bank of the State of Arkansas, which was upon the lands, and requested persons present not to bid against him on that account. It also alleges that the defendant, Joseph Wright, well knew these facts at the time of the endorsement and transfer of the certificate of purchase to him.

The proof introduced fully substantiates the answer to the cross matter.

It has been laid down as a general proposition that trustees—unless they are nominally such to preserve contingent remainders—agents, commissioners of bankrupts, assignees of bankrupts, solicitors to the commission, auctioneers, creditors who have been consulted as to the mode of sale, or any person who by their connection with any person, or by being employed or concerned in his affairs, have acquired a knowledge of his property, are incapable of purchasing such property: 2 *Sugden on Vendors and Purchasers.*

The declaration of James, at the tax sale, that he was acting for the benefit of the estate of Elizabeth W. Wright, together with the fact that he was its attorney, placed him in such confidential relation as would come within the above general rule. Joseph Wright, knowing all these facts, at the time of the transfer of the certificate, cannot acquire any greater interest in the lands than James himself would have had, if he had obtained the deed himself. It is clear, then, that this purchase by James is *void,* as between himself and the estate of Elizabeth W. Wright.

*Second.* Was the deed of trust executed to Garland H. Dorris by Elizabeth W. Wright null and void, as against the creditors of the said Elizabeth W?

This was a conveyance of the lands in trust to Garland H. Dorris for the benefit of her minor child, James W. Wright, the

consideration of which was "love and affection." At the time of its execution, it was admitted that Mrs. Wright was owing large sums of money, and that she was insolvent and wholly unable to pay what she owed.

The rule of law governing transfers of property, under these circumstances, is well expressed by Chief Justice Johnson, in the case of *Dodd vs. McCrew*, 8 *Ark.*, 106, and reiterated by him in the case of *Smith vs. Yell*, 8 *Ark.*, 470, and it is that "when there is no actual fraudulent intent, and a voluntary conveyance is made to a child, in consideration of love and affection, if the grantor is in prosperous circumstances, unembarrassed and not considerably indebted, and the gift is a reasonable provision for the child, according to his state and condition in life, comprehending but a small portion of his estate, leaving ample funds unincumbered for the payment of the grantor's debts, then such conveyance will be valid against debts existing at the time. But though there be no fraudulent intent, yet if the grantor was considerably indebted and embarrassed at the time, and on the eve of bankruptcy, or if the nature of the gift be unreasonable, considering the condition in life of the grantor, disproportioned to his property, and leaving a scanty provision for the payment of his debts, then such conveyance will be *void* as to creditors." See, also, *Van Wyck vs. Seward*, 6 *Paige*, 67; *Salmon vs. Bennet*, 1 *Conn.*, 525.

When this trust-deed was executed the complainants were creditors of Mrs. Wright, she owing them a large sum of money. She was insolvent and wholly unable to pay her debts, and, under the rule of law, as announced in the above cited cases, we have no hesitation in saying that this conveyance and gift, being voluntary, were, as to these complainants, absolutely void *in law*. See, also, the following cases : *Jackson vs. Seward*, 5 *Cowen*, 87 ; *Rende vs. Livingston*, 3 *John. C. R.*, 481 ; *Buckhorn vs. Jett*, 1 *Brockenb. R.*, 500 ; *Hapskirk vs. Randolph*, 2 *Id.*, 138; *Bullard vs. Briggs*, 7 *Pick.*, 533 ; *Bennett vs. Bedford Bank*, 11 *Mass.*, 421 ; *Ridgway vs. Underwood*,

4 *Wash. C. C. R.*, 137; *Sexton vs. Wheaton*, 8 *Wheaton*, 229; 2 *Hovendon on Frauds*, 74, and cases there cited.

We now come to the last, and, to these complainants, the most important inquiry in the case, to-wit : Did the purchase of these lands, made by Elizabeth W. Wright in 1857, of the trustees of the Real Estate Bank, and of the heirs of Wood Tucker, inure to her individual benefit, or was she but the trustee for the estate of Joseph J. Wright in the purchase, she being its administratrix ?

The rule of law has been well settled, that an executor or administrator cannot buy any part of the estate of his testator or intestate, as, in equity, he is held to be a trustee for the next in kin, legatees and creditors, and has no right to become the purchaser of the property which he represents. We are, however, asked to consider the case as not within the above rule, because the administratrix, in this instance, purchased the land of a stranger, and not at public sale of the estate, and that the purchase was made with the money borrowed of the complainants, and not from any effects of the estate of Joseph J. Wright. What are the facts ? It appears that Joseph J. Wright died on the 21st day of December, 1854. At the time of his death he was residing on these lands. At the May term, 1854, of the Circuit Court of Jefferson county, a decree was obtained against Wood Tucker and the said Joseph J. Wright, in favor of Henry L. Biscoe, trustee of the Real Estate Bank. This decree shows that unless a certain amount of money was paid by either Wood Tucker or Joseph J. Wright, within a certain time, the commissioner named should have power to sell these lands. The money was not paid, and the lands were sold as ordered in the decree. The trustee of the bank became the purchaser; the commissioner afterward making a deed, duly executed, acknowledged and recorded. All this transpiring was before the death of Joseph J. Wright.

After Mr. Wright's death, letters of administration were granted to his widow, Elizabeth W. Wright, on the 9th day

of January, 1855, and she was duly qualified as such administratrix. On the 12th day of March, 1859, Elizabeth W. Wright purchased these lands in her own name, of the trustees of the Real Estate Bank, and by deed, purchased the interest of the heirs of Wood Tucker, on the 22d day of December, 1859.

Thus it is to be seen that these lands were once owned by Joseph J. Wright, but were sold, under a judicial sale, by virtue of a decree rendered against him, in a court of competent authority. Whatever interest Joseph J. Wright had in the lands was transferred to the purchaser, and we can see no reason why Mrs. Wright, though administratrix of Joseph J. Wright's estate, could not purchase them of such person, if the transaction is not connected with fraud or collusion to the detriment of the estate. These lands did not constitute any part of Joseph J. Wright's estate, at the time of his death. The decree was rendered and the sale effected during his lifetime. The administratrix never took possession of them as such, nor were they ever under the control of the Probate Court, as will appear from the inventory of the estate on file. But it is claimed that Mrs. Wright made the purchase with the money and effects of the estate, and that the heirs have a resulting trust in the lands.

The law has never been favorably disposed to recognize trusts, created by operations of law, while it may be admissible to prove a trust in opposition to a deed or written instrument. Yet such evidence, for this purpose, must be of so positive a character as to leave no doubt of this fact, before it can set it aside. Does the evidence, disclosed in the record, show the money used in the purchase came from the estate of Joseph J. Wright?

Hartwell J. Wright, the administrator of Elizabeth W. Wright's estate, says that she resided on these lands from the death of his father until the time of her death, and she had no other home. He was well acquainted with his mother's business since his father's death, and he was

entrusted by her with the management of his father's estate, and he never knew of his mother owning any property, real or personal, in her own right, except some claim that may be set up by deed from Gordon N. Peay, receiver of the Real Estate Bank, executed the 1st of March, 1859. The only source of income that his mother had, and all she had to depend on for her living, was the proceeds of the lands above mentioned. In all her business transactions, the money that she had or used was derived from the proceeds of these lands.

The testimony of Thomas S. James is about to the same effect—no more definite or more conclusive.

This is all the evidence, in the least tending to show, either by expression or implication, that the purchase money for these lands came from the estate of Joseph J. Wright. No evidence whatever, as to how much money ever was received by Mrs. Wright from the estate; what was the yearly value of it, nor as to how much money ever was in her hands belonging to it. On the contrary, we have the direct testimony of M. L. Bell that he *knew* that Mrs. Wright purchased bonds to pay the Real Estate Bank for these lands about the year 1858, or spring of 1859, and that he *knew* she borrowed money from the complainants, Campbell & Strong, to purchase the bonds. Paschal W. Strong, one of the complainants, also testifies, that "on the 12th day of February, 1859, Campbell & Strong advanced to her twenty-five hundred dollars in cash, and on the 4th day of November, 1859, they accepted her three drafts on them for twenty-seven hundred and forty-five dollars—the three amounting to the sum of $8235. The money previously borrowed, with the drafts, amounting, in all, to $10,735. Mrs. Wright said, at the time she obtained it, that she wished to use it in the purchase of the lands belonging to her father's estate. This direct evidence, as to the procurement of the money, taken in connection with the fact that the purchase was made immediately afterwards, and the declaration of Mrs. Wright, that that was what she desired

of it, must be considered as conclusive that she did not use the money of the estate in the purchase, but she obtained the means of these complainants. The lands not belonging to the estate of Joseph J. Wright, and she not using the money or effects of that estate, with which to make the purchase, she had a right to take the title in her own name for them, and as such, they must be held subject to the payment of her just and lawful debts.

The decree of the chancellor below does not make any final disposition of the tax-deed of Joseph Wright. This deed having been found to be void as to the interests of Emma W. Wright, the decree should so declare. With this modification the decree of the Jefferson Circuit Court is in all things affirmed.