The bill then charged, that Jane M'Cuistion, being the widow of Robert M'Cuistion, and the Complainants, Ruth and Jane, being his orphans, and being infants, and Jane M'Cuistion being the mother and guardian, and having the care and custody of their persons and estates, and their grandfather, Moses Ruth, having obtained a warrant from Lord Granville's office, and caused a survey to be made thereupon for them, and having paid the price and fees for the land, and Jane M'Cuistion, their mother, well knowing the premises, having obtained a grant to her and in her own name, upon and by virtue of the said warrant and survey, so obtained, and made by Moses Ruth, became seised of the said tract of land, in trust and to the use of the Complainants, Ruth and Jane, and bound in Equity to (585) convey the same to them as they should direct.
That Jane M'Cuistion afterwards intermarried with Thomas Blair, who, together with the said Jane, on 4 February, 1765, made and executed a deed of conveyance of the said lands, to James Archer, in fee simple, but with warranty only against the said Thomas Blair and Jane his wife, and their heirs, and all claiming under them and describing the said tract as granted to the Said Thomas Blair's wife Jane, by Earl Granville, by a deed patent, bearing date 29 July, 1760. *Page 366 
The bill then charged that James Archer at and before the time he contracted for the purchase of the said tract of land, and the time of making the deed to him, and at and before the payment of the purchase money, had full notice of the premises and of the trusts aforesaid, and so became trustee of whatsoever estate and interest passed by the deed to him and his heirs, for the Complainants Ruth and Jane, and their heirs. That Archer had since died, having previously published in writing his last will, duly executed to pass his real estate, and — therein and thereby devised the lands to his sons, who were the Defendants in this case, with Thomas Blair and Jane his wife.
The bill prayed as against the devisees of Archer, a conveyance of the legal estate in the lands, to the Complainants Ruth and Jane, and an account of the rents and profits; and as against Blair and wife, that if by reason of want of notice to Archer or other equitable circumstances in his favor, the Court would not decree his devisees to convey, then that Blair and his wife be decreed to account with Complainants, and pay over to them the purchase money received from Archer, with interest.
To the bill was appended a copy of the certificate of survey with a plat thereof annexed, which Lord Granville's surveyor had returned into the proper office, and upon which the grant issued. This plat and certificate dated 10 August, 1756, set forth that the land was surveyed "for Ruth (586) and Jane M'Cuistion, orphans of Robert M'Cuistion, deceased." And a duplicate of the plat and certificate of survey was, by the custom of Lord Granville's office, annexed to the grant, and referred to in the grant.
There was also appended to the bill a copy of the grant issued upon the foregoing plat and certificate of survey, to Jane M'Cuistion, widow.
The bill was filed in 1808, and the Complainants Ruth and Jane, did not labour under the disability of coverture until after their arrival to full age. Ruth having attained to the age of twenty-one years in 1775, and Jane in 1777. That shortly after their respective intermarriages, they and their husbands asserted their claim to the lands, and commenced suit against Archer; which suit was abandoned. About the same time they commenced suit against Blair and wife; which suit was also abandoned; and in 1804, they brought an action at law against Blair, claiming the purchase money received from Archer, treating his sale to Archer *Page 367 
as an agency on their behalf. In this suit they were nonsuited, and then they filed this bill.
Thomas Blair and wife in their answer, denied that the lands had been entered by Moses Ruth for the Complainants Ruth and Jane, that he had paid the purchase money or fees of office, or left the same with the Defendant Jane, his daughter, or that he had purchased a warrant and procured the lands to be surveyed for the said Ruth and Jane. They alleged that the entry was made in Earl Granville's office by Robert M'Cuistion, father of the said Ruth and Jane, and in his name; that after his death, the Defendant Jane, his widow, having administered upon his estate, sold the entry at the sale of the personal estate and she became the purchaser: that upon applying at the office for a grant she found the entry had lapsed, and was advised to enter the land in her own name; that her agent, whom she employed to make the entry, by mistake, made the entry in the name of her daughters Ruth and Jane; that she paid the fees of office and obtained the grant in her own name. That (587) she did not hold the lands in trust for the Complainants,c. They insisted in their answer upon the length of time, during which Complainants had suffered their claim to lie, dormant, and prayed advantage thereof.
The devises of Archer, in their answer, referred to the answer of Blair and wife, and prayed advantage of the matters and things therein set forth; and alleged that their testator was a purchaser of the lands from Blair and wife for a valuable consideration, without notice of Complainant's equity.
The answers were replied to, and pending the suit, Jane Blair died, leaving her husband and three children her surviving. It was then discovered that she had not been privily examined, as the law directs, touching her execution of the deed to Archer; and the Complainants filed a supplemental bill and bill of revivor, and made her children parties.
The cause came on to be heard at September Term, 1817, before his Honor Judge SEAWELL, who directed a Jury to be impannelled to try the following issue, to-wit, "whether the grant made by Earl Granville to Jane M'Cuistion, mentioned in the bill of Complaint, was fradulently obtained, or not, upon an entry, to which the Complainants Ruth and Jane were entitled. "The Jury found that the grant had been fraudulently obtained by Jane M'Cuistion upon an entry, to which the Complainants Ruth and Jane were entitled. *Page 368 
The case was then transmitted to the Supreme Court, upon the original and supplemental bill and bill of revivor, the answer of the Defendants and the finding of the Jury upon the issue submitted to them, for that Court to determine what decree the complainants were entitled to. It appearing in the case that the grant to Jane M'Cuistion was issued upon a survey made in the name of the complainants, Ruth and Jane. And as the grant so issued constituted a part of the Defendant's title, and upon the face of it expressed to (588) be made according to the annexed plat and certificate, it was submitted to the Supreme Court whether Archer, claiming under this grant, should not be held and construed to have notice of the fact set forth in the said plat and certificate, to-wit: that the lands were surveyed for the complainants, Ruth and Jane.
The Defendant, Jane M'Cuistion, obtained Earl Granville's deed in 1760; and with her second husband, Thomas Blair, sold to Archer in 1765. Archer entered, claiming the lands as his own, and continued in possession to the time of filing this bill in 1808. His possession, and that of his devisees, has been for forty-three years. The complainants, Ruth and Jane, arrived at full age more than thirty years before the filing of this bill, and if they have labored under any disability other than infancy, it has been cumulative, and ought to have been shewn by them, if they could avail themselves of it. During all this time they lie, idle, and do not assert their title, except by instituting suits against Archer and Blair about 1779, and abandoning them, and bringing a suit for the purchaser money against Blair, in the year 1804. Upon this statement of the case, we should violate the will of the Legislature as expressed in regard to legal titles, in the act of 1715, for quieting titles and limiting the time in which actions should be brought. For, although that act speaks of actions in the Courts of Law, yet it is the province of a Court of Equity to infuse its spirit into their decisions as much as can be done, without violating its own fundamental maxims. For it is its only will, as that of the Courts of Law, to obey the legislative will, when expressed either directly or indirectly.
But it is said, that time does not bar a fraud, and here the Jury have found that the grant was fraudulently obtained. To which it may be answered, that even the investigation of a fraud will not be permitted after a great lapse of (589) time, where the claimants are not the persons who *Page 369 
committed the fraud, although they may be volunteers. But certainly Equity will respect time after the fraud is discovered. The Defendants who are charged with the fraud, have not concealed the evidence of that fraud. They have annexed a certificate of survey to their deed, and placed it, together with their deed, on the public records of the country, liable to the inspection of all: and this they did at the very time their deed was obtained. It is by this entry and survey alone, that the Defendants are or can be affected with notice; and the only difference between the Complainants' and Defendants' opportunity of knowing it, is, that it forms a link in the Defendants' chain of title, and the deed is referred to in their deed. We cannot therefore but perceive, that the Complainants must long since have had a knowledge of Defendant's title; and it would contravene one of the established rules of this Court, to support a claim so stale. The bill must be dismissed.