\* JACOB FRONEBERGER, Adm'r, v. JOHN G. LEWIS, Adm'r.

*Purchase by Administrator at Sale for Assets—Constructive Fraud.*

1. Where, upon the petition of an administrator, the land of his intestate is sold for assets by a commissioner appointed by the Court, and the administrator purchases for his own use and benefit, the heirs and other persons interested in the disposition of the realty have their election to treat the sale as a nullity, or to hold the administrator responsible for the actual value of the land.

2. To the general rule that a trustee is not permitted to purchase at his own sale there are the following exceptions :—

   Where the trustee has a personal interest in the property, he may, if necessary, bid it in to protect that interest. But even then, it is proper, if not indispensable, that his bidding should be sanctioned by the previous permit or subsequent confirmation of the Court, upon a full disclosure of all the facts.

   And where the *cestuis que trust* consent to the purchase or ratify with full knowledge of all the facts.

(*Ryden* v. *Jones*, 1 Hawks 497 ; *Gordon* v. *Finley*, 3 Hawks 239 ; *Hunt* v. *Bass*, 2 Dev. Eq. 292 ; *Boyd* v. *Hawkins*, Ib. 195 ; *West* v. *Sloan*, 3 Jones Eq. 102 ; *Patton* v. *Thompson*, 2 Jones Eq. 285 ; *Brothers* v. *Brothers*, 7 Ire. Eq. 150 ; *Roberts* v. *Roberts*, 65 N. C. 27 ; *Stilly* v. *Rice*. 67 N. C. 178 ; *Simmons* v. *Hassell*, 68 N. C. 213 ; *Lee* v. *Howell*, 69 N. C. 200, cited, distinguished and approved.)

CIVIL ACTION commenced in Gaston and removed to and heard on exceptions to the report of a referee at Fall Term, 1877, of CATAWBA Superior Court, before *Cloud, J.*

---

\* Bynum J. did not sit on the hearing of this case.

The plaintiff brought this action upon a note due his intestate from the defendant's intestate, and the case was referred by consent to obtain an account of the estate, and it was found that the defendant filed a petition in the County Court of Gaston in 1866 to sell the lands of his intestate to pay debts, and that the same was sold by J. B. White, commissioner, and the defendant became the purchaser at $705. The value of the land at the time of sale was $2,000. A report of sale was made and confirmed by the Court, and a deed executed to the defendant. Among the exceptions filed was one by the plaintiff,—that the referee did not charge the defendant with the value of the land purchased at his own sale as aforesaid. This exception was sustained at Fall Term, 1873, of Gaston Superior Court, and upon the defendant's appeal, the case was remanded. See same case, 70 N. C. 456. And at Spring Term, 1875, upon the plaintiff's motion, it was removed to Catawba, and His Honor upon defendant's application referred the case to the clerk to ascertain whether said sale was made by White as commissioner appointed by the Court, or as agent of the defendant; and to report the actual value of the land, and whether the defendant in the purchase of the same was guilty of any collusion with White. From this order of re-reference and refusing judgment for the value of the land, the plaintiff appealed, and from the judgment overruling the exceptions of defendant, he appealed.

*Messrs. J. F. Hoke* and *M. L. McCorkle,* for plaintiff.
*Messrs. G. N. Folk* and *R. F. Armfield,* for defendant.

READE, J. We are of the same opinion with His Honor in his rulings upon all the exceptions on both sides, except in re-referring the matter of charging the defendant with the difference between what he bid for the land, $705, and

its value at the time of sale, $2,000. That matter was *res adjudicata,* having been passed upon at a former term of the Court below, and affirmed by this Court on appeal. 70 N. C. 456.

That a trustee or other fiduciary can not purchase at his own sale is an iron rule *at law:* nor indeed can any one else, because in every sale, there must of necessity be two persons,—a vendor and vendee. It is equally true that where there are two persons, a vendor and vendee, as where a second person is substituted to sell or buy, the sale is valid *at law,* but *in equity* the substitution of a second person makes no difference; the validity or invalidity of the sale being determined by other considerations.

This is so well established that we could scarcely be excused for encumbering the case with authorities, except to show how general is the rule and how few the exceptions.

The earliest case in our Reports is *Ryden* v. *Jones,* 1 Hawks 497, elaborately argued by *Hogg, Hawks* and *Gaston;* opinion by TAYLOR, C. J: Executor sold at public auction, sale necessary, fair, full price, all persons interested present and assenting, except a feme covert, purchase by a third person for the executor, twenty years thereafter sale declared void.

The next case is *Gordon* v. *Finley,* 3 Hawks 299: The widow and one of the sons were administrators. It was agreed by the son and all the distributees who were of age, that the widow should pay off debts to the value of one of the slaves, and take him as her property, which she did. Many years thereafter her title held to be bad, HENDERSON, C. J., saying: "No act of hers could be valid where her duty and interest were in opposition. In the sale of the negro it was her duty to get the best price, at least his value; it was her interest if she became the purchaser that she should obtain him on the lowest possible terms. Nor is it an answer to show that in this particular case, full value

was given. For wise purposes the rule of law is general and makes no exceptions. A trustee can not purchase at his own sale, that is of himself. The rule may at times produce individual hardships and inconveniences, but its general operation is beneficial. Lead us not into temptation came from the lips of Him to whom error cannot be imputed. To implore it would not disgrace the most honest and pious among us. To make exceptions from the rule in particular cases because full value had been paid, would produce litigation. And who is there to show full value * * * I therefore think that the rule should not be departed from. I will not say in any instance, but I must say in any that I can call to mind. * * * I believe all the assertions made in this opinion are to be found in the common place books, and therefore I have not cited authorities."

The next case is *Hunt* v. *Bass*, 2 Dev. Eq. 292: Edwin Bass was trustee and sold property at auction. His two brothers bought for themselves and him. RUFFIN, C. J. said: "A sale thus conducted can not be supported in this Court. * * * Such conduct amounts to a flagrant breach of trust, and subjects the trustee to the payment of the full value of the property sold, and in that way Edwin would be charged here if necessary, and Gideon also who participated with him in conducting the sale and gaining an interest under it. But as the slaves have got back into the hands of those who did the wrong, the plaintiff has the right to them specifically. * * * The plaintiff is therefore entitled to an account * * * for the full value of the property sold, other than the slaves, and to a reconveyance."

Observe that here the trustee was held liable, not for what the property was bid off at, nor for what he subsequently sold it at, if he had sold it, but for its full value. And so he was liable for the full value of the slaves, but as the slaves had

got back into his possession and the *cestuis qui trust* preferring it, he was compelled to surrender them specifically.

So in *Boyd* v. *Hawkins,* 2 Dev. Eq. 105, RUFFIN, C. J. says : " The well established principle of equity in this State is that a trustee cannot purchase the trust property, directly or indirectly, at a sale made by himself, either privately or at auction. It is founded on the notion that it exposes him to temptation, and the *cestui qui trust* to imposition. Although no actual fraud be proved, the contract is invalid by reason of the danger of fraud."

So in *West* v. *Sloan,* 3 Jones Eq. 102 : The executor sold slaves at auction and a third person bid them off for him. Twenty years thereafter he was compelled to surrender such as were on hand and to account for their hire, and note, to pay full value for those that he had sold, not what he gave for them at public sale, nor yet what he sold them for, but for their full value,—opinion by NASH, C. J.

So in *Patton* v. *Thompson,* 2 Jones Eq. 285 : The guardian of a lunatic filed a petition in the Court of Equity for the sale of his ward's land. The Court appointed the clerk and master to make the sale, the guardian procured another to buy the land, the sale was reported fair and full, and was confirmed and title made, and then the guardian took a deed from the purchaser. The only thing he had to do with the sale was to act as crier and clerk. PEARSON, J. "It is an inflexible rule that where a trustee buys at his own sale even though he gives a fair price, the *cestui qui trust* has his election to treat the sale as a nullity, not because *there is,* but because there may be fraud. * * * The allegations tending to show *actual* fraud, as that the sale was not duly advertised, competition was suppressed, &c., are not sustained by the proof and must be put out of the case. * * * The position taken for the defendant, that this being a sale by order of a Court of Equity, and the sale being confirmed by the Court, makes an exception to the general rule above

mentioned, and is to be considered *res adjudicata*, does not apply to this case, for here, the Court had no notice that the guardian was in fact the purchaser. We are not at liberty therefore to express an opinion whether such an exception can be allowed, but we will say this—if it is allowed at all it should be with extreme caution and only under very peculiar circumstances. Who but the guardian can be relied on to show the property to persons wishing to buy, and to take the necessary steps to make it bring a fair price? Who but the guardian can the Court look to for information as to whether the matters have been conducted in such way as to bring the property to sale under the most advantageous terms, and that in fact it did sell for a fair price? It must be declared that the guardian holds the property in trust and there must be an account for rents, &c."

Observe that here is a strong intimation, supported by cogent reasons that although the sale was necessary, fair and full, and made by order of a Court of Equity, by its own officer, and confirmed with full knowledge that the guardian had bought, yet except under very peculiar circumstances he ought not to be permitted to hold against the will of the *cestui que trust*.

So in *Brothers* v. *Brothers*, 7 Ire. Eq. 150: The trustee sold land and slaves at auction and a third person bid them off, and he made title and took a reconveyance, and subsequently sold the land for the same it was bid off at. PEARSON, J.— " It is an inflexible rule that where a trustee buys at his own sale, even if he gives a fair price, the *cestui que trust* has his election to treat the sale as a nullity. * * * It must be declared to be the opinion of the Court that the plaintiff is entitled to have the personal property resold, and to have the land resold unless the subsequent sale by the defendant was *bona fide* and for a fair price. There must be a reference to inquire whether the land was sold by the defendant, and

if so, for what price, and the value of the land at the date of the sale."

Here observe that it mattered not what the trustee gave for the land, nor yet what he sold it for, except that if he had sold it to a *bona fide* purchaser they would not disturb the purchaser, otherwise they would at the election of the *cestui que trust;* but the reference was to ascertain the value of the land at the time of the sale so as to charge the trustee with that value, if he had sold the land. And that is precisely what was done in the case before us, so that that case is precisely in point.

In *Roberts* v. *Roberts,* 65 N. C. 27, the Court say: "We are satisfied that the administrator contrived to have the land of the estate sold by himself as administrator and commissioner to make the proceeds assets, for the purpose of buying the land himself. In the petition for the order of sale he overstated the amount of the debts of the estate by nearly double, and he described the lands so as to conceal from the Court their value. * * * The authorities cited in brief of plaintiff clearly show that a trustee can not buy at his own sale, either by himself or through another. Indeed it is common learning. There are some qualifications of the general rule, as where he does so without fraud and with the consent of the *cestuis que trust,* or their subsequent sanction."

In that case the sale was declared void although made and confirmed by order of Court and title made to a third person. It is however cited mainly to show how easy it is for an administrator to impose upon the Court in getting the order and having it confirmed. And to corroborate what was said by Judge PEARSON, *supra,* that the Court was obliged in such cases to rely upon the trustee for information.

In 23 N. J. Eq. R. 106 and 302, it is said, that a trustee can never be the purchaser of the trust property without the consent of all the *cestuis que trust.* In 27 Ark. 637, and in

116 Mass. the same is held, and that if he does, he shall be charged with the full value. And in one of those cases the administrator, who had sold lands for assets at an under value and purchased them himself and the sale was declared void, insisted that he had the right to hold the lands by accounting for their full value, but it was held to be at the election of the *cestuis que trust.*

I have not the case before me, but I have read it in con-nection with this investigation, and think I state it cor-rectly.

In addition to these *cases* the common place books, as said by HENDERSON, C. J., teach no other doctrine. Thus it will be seen that we have a train of decisions with opinions by TAYLOR, C. J.; HENDERSON, C. J.; RUFFIN, C. J.; NASH, C. J.; PEARSON, C. J.; all to the same effect, that a trustee can not buy the trust property either directly or indirectly. And if he does so, he may be charged with the full value, or the sale may be declared void at the election of the *cestui que trust*, and this, without regard to the question of fraud, public policy forbidding it.

In unison with those decisions is our statute that " at any auction sale of real property belonging to the estate, the executor, administrator or collector may bid in the property and take a conveyance to himself as executor, &c., for the benefit of the estate, when in his opinion this is necessary to prevent loss to the estate."

So that when a sale is made whether by himself or by an appointee of the Court or other person, it is his duty to see that the property is not sacrificed. But in opposition to that just and sensible provision, and to the inflexible general principle, it is insisted that if the sale be made by a third person he may buy for himself, notwithstanding the tempta-tion and danger which public policy guards against. Not in one case in a thousand would a trustee who designs an advantage, take it straight by himself. He will contrive a

28

confederate to sell, or a confederate to buy, and all the better if he can get the color of an order of Court.

In *Stilly* v. *Rice*, 67 N. C. 178, the executor sold land and personal property at auction and had it bid in by his wife and others, and some of the personal property he secreted and did not sell. The Court set aside the sale of the land and ordered a resale, and directed that in taking the account the executor should be charged with the full value of the personal property that was bought in for him, without regard to what it was bid off at, and that he should be charged with the full value of the property that was not sold,—PEARSON, C. J. delivering the opinion.

This is cited to show that he may be charged with the value without a resale. It is however insisted by the defendant that *Simmons* v. *Hassell*, 68 N. C., 213, is an authority against what we have said. In that case, Simmons the husband of the widow and guardian of the children filed a petition to sell land belonging to the widow and wards, and the clerk and master sold, and Simmons, whose bid Hassell took, purchased the land, and subsequently the ward sold the land and his vendee brought an action of ejectment against Hassell, alleging that his deed from the clerk and master was void. Observe that this was an action at law, where of course the legal title only could be looked to, and that was clearly in Hassell. BOYDEN, J., delivering the opinion said : " His Honor was mistaken in holding that the sale of the clerk and master could be attacked in this collateral way. This is an action of ejectment under our old system brought to try the legal title and not any equitable claim to the premises. The deed of the clerk and master passed the legal title to the purchaser, and this title can only be attacked by some proceeding in the nature of a bill in equity, and not by an action of ejectment. This puts the plaintiff out of Court."

It will be seen that that decision does not touch this case.

But Judge BOYDEN does go on to say outside of the case, that the husband of the widow and guardian of the children could purchase at the clerk and master's sale, because his wife had dower which was included in the sale, and he was also guardian of the children, and it was his right and duty to see that the land brought a fair price. And he says further that there is no objection to a guardian's bidding where the sale is made by a commissioner, &c. If he means that no objection can be taken *at law*, it is just what he had said before, and is true. But if he means that no objection can be taken in equity, it is contrary to what he said before. Although the greatest respect is due to any thing that fell from that learned Judge, yet it would be doing him injustice to strain his words farther than the case warranted. The same may be said of *Lee* v. *Howell,* 69 N. C. 200. And it may be as well to say just here, that wherever a case is found to militate at all against the general doctrine, it has been influenced by the *legal* as distinguished from the *equitable* aspects of the question.

*At law* a trustee can not buy at his own sale, because to constitute a sale, there must be two persons, a vendor and a vendee. So *at law* when there are two persons, that is, when a second person is substituted to make the sale or to buy, the legal requirement is supplied and the sale is valid. And therefore it is that a trustee designing a personal advantage substitutes or procures to be substituted such second person, when, like the ostrich, having hid his own head, he thinks he can not be seen. But equity is clear sighted and looks at the substance, and the substitution of the second person makes not the slightest difference, although it does make the sale valid *at law.*

There are a class of cases which have to be distinguished from the general rule as follows:—Wherever the trustee has a personal interest in the trust property, there of course he must have the right to protect it, and if to bid for and

buy it be necessary to protect it, he must be allowed to do it *for that purpose.* The case stated by Judge BOYDEN was an instance of this. There, the trust property, land, belonged not to the wards alone, but to the wife of the guardian, and as Judge BOYDEN says, he had the right to bid to keep the land from being sacrificed. The same is true where a mortgagee sells land to pay his debt, and the property is likely to be insufficient, and he will lose his debt unless he bid for the property. In these cases, and the like, it is usual and perhaps necessary for " the trustee and beneficiary to obtain leave of the Court to bid, or else to have a confirmation with full knowledge of all the facts appearing.

The only other exceptions are where the *cestuis que trust* consent or ratify with full knowledge of all the facts. In the case before us there is not a single favorable circumstance for the defendant. No necessity is shown for having a third party to make the sale. No reason why the officer of the Court was not appointed. No evidence as to what was reported to the Court, or that it was made known that the administrator had bought. The price was one third of the value. No offer to surrender the land or to account for its value. It is suggested that the defendant ought to be allowed to surrender the land instead of being charged with its value. Doubtless that is usual at the election of the *cestuis que trust.* But there is nothing to show the condition of the land. It may have been spoiled, or it may have been improved. There can be no injustice to the defendant in making him pay the simple value of the land with interest, especially as he has never offered to surrender. Indeed his motion is to hold the land, not at the value already ascertained, but at a value to be ascertained by a re-reference.

If a proper foundation had been made for a re-valuation, as that the former valuation by mistake had been made

excessive, it may be that this Court where the judgment was affirmed might have afforded relief. But that has not been done. It is evidently the desire and the purpose of the defendant to keep the land. Indeed I think it was stated on the argument that he had had his homestead laid off on it. His object seems to be to have it revalued. He also asks a reference to ascertain whether he had collusion with the commissioner who conducted the sale. That inquiry is unnecessary, for concede that there was no actual fraud, yet the grossly inadequate price—one third the value— supplies the place of fraud. It is unjust to hold the land at that price however acquired, without the consent of the beneficiaries. This will be certified.

Error.                                    Judgment reversed.

NOTE.—READE, J. In the appeal of the plaintiff, this being the appeal of the defendant in the same case at this term, the principles governing this case are decided.

No Error.                                    Affirmed.