SYLVIA HARRIS MOREHEAD, JOHN WESLEY HARRIS, WAYMAN HARRIS, AND WILEY HARRIS, JR., PLAINTIFFS v. DAISY HARRIS, MARY LOUISE PRICE, NOW MARY LOUISE PRICE BOQUIST, AND HER HUSBAND, RICHARD E. BOQUIST, HELEN MOORE PRICE, NOW HELEN MOORE PRICE HOOPER, AND HER HUSBAND, PHILLIP M. HOOPER, DEFENDANTS,

AND

CORA JANE LEA, EXECUTRIX OF DAISY HARRIS ESTATE, CORA JANE LEA (CORA E. LEA), LETTIE ORA WALKER (ORA LEA WALKER), FLORENCE LEA FULLER AND HER HUSBAND, SAMUEL FULLER, EFFIE LEA SNIPES AND HER HUSBAND, AMOS SNIPES, BESSIE LEA HAYES AND HER HUSBAND, JAMES HAYES, GEORGIA LEA LYNN, BANKS LEA AND HIS WIFE, ATLANTA G. LEA, MABRY LEA AND HIS WIFE, EUNICE H. LEA, MAEBELLE VINCENT WAGSTAFF AND HER HUSBAND, HUBERT WAGSTAFF, EDNA HARRIS GARRETT AND HER HUSBAND, MURPHY GARRETT, AND THE FOLLOWING NIECES AND NEPHEWS OF THE DEFENDANT, DAISY HARRIS, DECEASED: WILMA WALKER, NELLIE WALKER, ELIZABETH WALKER, EUGENE WALKER, HILLARY WALKER, GRADY BROOKS WALKER, VIVIAN CORBETT, WALTER ELMER CORBETT, PRISCILLA CORBETT, LUTHER CORBETT, WILLIE LEA VINCENT, ADA VINCENT, JENEVA VINCENT, LOUISE VINCENT, NESSIE VINCENT, DONALD VINCENT, DEMASTER VINCENT, BEATTY OR BADDIE VINCENT, AND ALL OTHER HEIRS AT LAW OF DAISY HARRIS, DECEASED, AND ALL SPOUSES, GUARDIANS, ADOPTED PARENTS, EXECUTORS, ADMINISTRATORS AND REPRESENTATIVES AND ALL OTHER PERSONS WHO ARE OR MAY BE INTERESTED AS HEIRS, DEVISEES, GRANTEES, ASSIGNEES, LIENORS, GRANTORS, TRUSTEES, FIRMS, CORPORATIONS, WHO MAY BE INTERESTED IN THE SUBJECT OF THIS ACTION, ALL OF WHOSE NAMES AND PLACES OF RESIDENCE ARE UNKNOWN TO THE PLAINTIFFS, ADDITIONAL DEFENDANTS.

(Filed 10 July 1964.)

**1. Mortgages and Deeds of Trust § 28—**

Where the widow in possession of property and entitled to dower therein purchases at the foreclosure sale of a deed of trust which had been executed by her and her husband, as between herself and the heirs at law she acquires title solely for the protection of her dower and holds the fee for the benefit of the heirs at law.

**2. Adverse Possession § 15—**

The deed to a widow purchasing at the foreclosure sale of the property is color of title, notwithstanding that her title is impressed with a trust in favor of the heirs at law, but the fact that the deed is color of title does not in itself constitute her possession thereunder adverse.

**3. Adverse Possession § 22—**

The conveyance of the property by the person in possession is evidence that the possession was in the character of owner.

**4. Adverse Possession § 16—**

The rule that possession under an instrument constituting color of title will be extended to the outermost boundaries of the description in the in-

strument applies when the conveyance is of a single tract, but where the instrument conveys two separate tracts, and the grantee goes into possession of only one of them, the constructive possession of the grantee will not be extended to the other tract, even though the tracts be contiguous.

**5. Adverse Possession § 8—**

Where the widow in possession of the first of two tracts subject to a mortgage purchases at the foreclosure of the mortgage and remains in possession of the first tract, the foreclosure deed is color of title, but she has no possession thereunder, adverse or otherwise, as to the second tract, and her actual possession of the first tract will not be held adverse to the heirs, her dower not having been allotted, in the absence of some open and positive change in the character of her possession sufficient to show that she was claiming the right to possession in the character of owner.

**6. Registration § 5—**

An innocent purchaser under the registration laws is one who purchases without notice, actual or constructive, of any defect in his grantor's title and who pays a valuable consideration.

**7. Same—**

The burden of proof is on the party claiming to be an innocent purchaser to so show.

**8. Same—**

A purchaser is charged with notice, not only of the existence and legal effect of every instrument in his grantor's chain of title but, if there is anything therein which would put a reasonable person upon inquiry, of all matters which such reasonable inquiry would have disclosed. Nevertheless he need look only to the muniments of title and he is not required to take notice and examine collateral records, instruments, or documents which are not muniments of his title and which are not referred to by any instrument in his chain of title.

**9. Same—**

Where the widow, appointed administrix, purchases the *locus* at the foreclosure sale under a deed of trust executed by herself and her husband, and then deeds a part of the locus to defendant's grantor, *held* the muniments in defendants' chain of title do not show that the husband was dead at the time of foreclosure or that the purchaser at the foreclosure sale was the widow administratrix, and therefore an examiner would be entitled to assume that the foreclosure cut off any interest of the husband or those claiming under him, and so defendants are not chargeable with the equity of the husband's heirs.

**10. Same—**

Even though a grantor cannot convey an estate of greater dignity than the one he has, an innocent purchaser for value is protected by the registration statute and takes free from equities which might have been enforced against his grantor but of which he has no actual or constructive notice.

**11. Dower § 8—**

Where the widow remains in possession after the death of her husband, the heirs are entitled at any time to have dower allotted and take possession of the property outside the dower allotment, and equity will not aid them in asserting their rights if they are not diligent but are guilty of unreasonable delay in asserting them.

**12. Adverse Possession § 7—**

The possession of one tenant in common is in law the possession of all his cotenants unless and until there has been an actual ouster or a sole adverse possession for 20 years from which an ouster would be presumed.

**13. Same—**

Less than 20 years prior to the institution of this action defendants' grantor acquired by deed, as an innocent purchaser, an undivided interest in the *locus in quo.* Defendants drained and graded the land and occasionally cleared it of rubbish and mowed it, and leased a right of way for ingress and egress across it, collected the rents and paid the taxes. *Held:* Such possession did not amount to an ouster of defendants' cotenants and therefore such possession for a period of less than 20 years does not ripen title in them as to the interest of their cotenants.

APPEAL by all defendants, except Edna Harris Garrett and husband, Murphy Garrett, from *Shaw, J.,* September 9, 1963, Regular Civil Session of GUILFORD (Greensboro Division).

This is an action involving title to land.

The *locus in quo* consists of two adjoining lots situate on the west side of, and abutting, Retreat Street in the city of Greensboro. These lots are referred to, in the amended complaint, as parcel No. 1 and parcel No. 2, and contain about ⅖ and ⅕ acres, respectively.

Hannah Harris deeded parcel No. 2 to Wiley Harris on 20 September 1893. Wiley Harris made his home on this lot and was living there at the time of his death.

Wiley Harris' title papers to parcel No. 1 are: (1) Deed from Thomas C. Hoyle, trustee, dated 15 December 1919, for a 5/6 undivided interest; (2) deed from Lizzie Black, dated 16 August 1921, for a 1/12 undivided interest; (3) deed from Edna (Harris) Garrett, dated 18 March 1920, for a 1/12 undivided interest — her husband did not join in the deed; he is living and is a party to this action.

Emma Harris, first wife of Wiley Harris and mother of plaintiffs herein, died in 1923. Wiley Harris married Daisy Lea in 1924; no children were born to this union. Wiley Harris and wife, Daisy, executed and delivered to Thomas C. Hoyle a deed of trust, dated 14 November 1927, conveying parcel No. 2 and 5/6 undivided interest in parcel No. 1 to secure an indebtedness of $200 to C. W. Bradshaw.

Wiley Harris died intestate on 3 May 1933 without having paid the indebtedness to Bradshaw. His widow, Daisy, qualified as administratrix of his estate on 31 May 1933. In her application she estimated the value of the real estate to be $1000. The personalty consisted of household furniture and $118.80 insurance. She was allotted a year's allowance of $300; the furniture was assigned to her at a value of $155, and a deficiency assessment of $145 was made against the estate. There was no allotment of dower in the real estate.

On 26 August 1933, Thomas C. Hoyle, trustee, sold, pursuant to the power of sale in the deed of trust, at public auction after due advertisement the land described in the deed of trust, and Daisy became the last and highest bidder at the price of $217.07. On 9 September 1933 said trustee executed and delivered to Daisy Harris a deed for parcel No. 2 and 5/6 undivided interest in parcel No. 1, purporting to vest in her a fee simple title to these lands. The trustee's final report of the sale, approved by the clerk of superior court, shows that the price $217.07 covered exactly the unpaid part of the indebtedness to Bradshaw plus costs of foreclosure.

The final account of the administratrix was filed and approved 12 June 1934. It showed receipts of $273.80, consisting of the furniture and insurance, and disbursements of $457.07, including $117.07 to Hoyle, trustee, "in Foreclosure of Wiley Harris property."

After Wiley's death, Daisy continued to live in the house on parcel No. 2. The house and lot were enclosed by a fence. On 1 June 1946, Daisy deeded to Grace Construction Company a part of parcel No. 1, purporting to convey the fee clear of any outstanding interest. And on 5 May 1947 Grace Construction Company deeded this portion of parcel No. 1 to Mary Louise Price (Boquist) and Helen Moore Price (Hooper).

Daisy Harris died testate on 6 February 1960, after this action had been instituted on 11 June 1956. In her will she devised the "house and lot located on Retreat Street in Greensboro" to her sisters, Cora Jane Lea and Lettie Ora Walker.

This action was instituted by Sylvia Harris Morehead, John Wesley Harris, Wayman Harris and Wiley Harris, Jr., the children and heirs at law of Wiley Harris. After the institution of the action Wiley Harris, Jr. died intestate without issue. The theory of plaintiffs' complaint is that Daisy Harris purchased the property for their benefit and to protect her dower, and that she and those claiming under and through her hold the legal title in trust for them.

The case was first tried at the January 1961 Session before Olive, J. (now E.J.). Trial by jury was waived. The judge found facts, and

concluded that the purchase by Daisy at the foreclosure sale was for the protection of her dower and for the benefit of plaintiffs as heirs at law of Wiley Harris, Daisy's possession was not adverse to plaintiffs, the deed to Mary Louise Price and Helen Moore Price conveyed only the dower interest of Daisy with respect to the land therein described, and plaintiffs are the owners of parcels Nos. 1 and 2 in fee. On appeal to Supreme Court it was found that certain persons having or claiming an interest had not been made parties, and certain facts necessary to a full and complete determination had not been found. The cause was remanded to superior court for the making of additional parties and for retrial. See *Morehead v. Harris*, 255 N.C. 130, 120 S.E. 2d 425.

All persons who have or might claim an interest in the lands have been made parties and are represented by counsel. The pleadings have been amended in certain respects. The cause came on again for hearing at the September 1963 Session of Guilford County Superior Court (Greensboro Division) before Shaw, J., and a jury. Judgment was entered, decreeing that plaintiffs are the owners in fee and entitled to the possession of parcel No. 2 and 11/12 undivided interest in parcel No. 1, that Edna Harris Garrett is the owner in fee and entitled to possession of 1/12 undivided interest in parcel No. 1, and that none of the other parties to the action have any right or title to the premises or any part thereof.

Additional facts and matters of pleading essential to an understanding of the legal questions raised by the appeal are set out in the opinion. The deeds, deed of trust and other documents referred to hereinabove are all recorded.

*Shuping & Shuping for plaintiffs.*

*Paschal & McNeely for defendants Edna Harris Garrett and Murphy Garrett.*

*Hoyle, Boone, Dees & Johnson for defendants Boquist and Hooper.*

*Herbin, Conoly & Forsyth for Additional Defendants.*

MOORE, J. Defendants' assignments of error bring into focus four crucial rulings of the court below.

(1). The trial judge instructed the jury that Daisy Harris could not acquire the real estate of her late husband, Wiley Harris, at the foreclosure sale by Thomas C. Hoyle trustee, to the exclusion of plaintiffs, the heirs at law of Wiley Harris, and "any title that she acquired by . . . purchase at said sale, she held as trustee for herself as widow and the plaintiffs as heirs at law."

At the time Daisy Harris purchased at the foreclosure sale she was the qualified and acting administratrix of the estate of Wiley Harris, and as his widow was entitled to dower in his real estate. No dower had been or was ever allotted.

An administrator acts in a fiduciary capacity in the control, custody and disposition of the property and assets of the estate and he cannot, through divided personality, become a purchaser at his own sale to his own profit and the detriment of those for whom he is trustee. *Development Co. v. Bearden,* 227 N.C. 124, 41 S.E. 2d 85. A trustee or other fiduciary cannot purchase at his own sale. There is a conflict of interest between administrator and purchaser — it is the duty of the former to get the best price possible, and it is the interest of the latter to obtain the property as cheaply as possible. *Froneberger v. Lewis,* 79 N.C. 426. If an administrator purchases at his own sale, the sale is not absolutely void, but is voidable at the suit of the heir or heirs irrespective of actual fraud. The burden is upon the administrator to overcome the equity of the heirs. *Davis v. Jenkins,* 236 N.C. 283, 72 S.E. 2d 673. If the administrator fails to carry that burden, the sale will be declared void, not because of the presence of fraud, but because of the danger of fraud. *Froneberger v. Lewis, supra.*

If the sale is affirmatively sanctioned and ratified by the heirs or beneficiaries, it will be declared valid. *Gurganus v. McLawhorn,* 212 N.C. 397, 193 S.E. 844; *Froneberger v. Lewis, supra.* If property is sold at a judicial sale made pursuant to an action to foreclose a mortgage, in which action all interested persons are parties, the fiduciary may purchase with leave of court and obtain a good title if full value is paid and the transaction is free of fraud. *Bolton v. Harrison,* 250 N.C. 290, 108 S.E. 2d 666.

There is a class of cases which form an exception to the rule that a fiduciary may not purchase property at his own sale. Whenever the administrator, trustee or other fiduciary has a personal interest in the trust property, then he must, of course, have the right to protect that interest, and if to bid for and buy the property be necessary to protect it, he will be allowed to do it *for that purpose. Froneberger v. Lewis, supra.* A mortgagee may buy to protect his debt. *Jones v. Pullen,* 115 N.C. 465, 20 S.E. 624. So may the creditor in a deed of trust. *Monroe v. Fuchtler,* 121 N.C. 101, 28 S.E. 63. A widower may purchase to protect his curtesy right. *Wilson v. Vreeland,* 176 N.C. 504, 97 S.E. 427. And a widow may purchase to protect her dower. *Winchester v. Winchester,* 178 N.C. 483, 101 S.E. 25. But as against heirs or beneficiaries the rights of the fiduciary under the purchase extends only to the protection of the interest for which the purchase was made.

A fiduciary may bid and take property to himself as trustee for the benefit of the estate to prevent loss to the estate. A trustee who acquires an outstanding title is considered in equity as having acquired it for the benefit of the *cestui que trust. Pearson v. Pearson,* 227 N.C. 31, 40 S.E. 2d 477.

Daisy Harris did not bid at her own sale. The sale was made by the trustee named in the deed of trust. But the rule which prohibits a fiduciary from purchasing at his own sale applies where the sale is brought about by another. *Pearson v. Pearson, supra.*

If a life tenant purchases the property at a sale to satisfy an encumbrance, he cannot hold such property to his exclusive benefit, but will be deemed to have made the purchase for the benefit of himself and the remainderman or reversioner. If the life tenant pays more than his proportionate share, he simply becomes a creditor of the estate for that amount. *Creech v. Wilder,* 212 N.C. 162, 193 S.E. 281. Dower is a life estate. If the doweress, life tenant, purchases at a sale to satisfy an encumbrance, she cannot hold the property to her exclusive benefit, but will be deemed to have purchased for the benefit of herself and the remaindermen. *Farabow v. Perry,* 223 N.C. 21, 25 S.E. 2d 173.

Defendants do not plead an estoppel, and do not allege or offer evidence tending to prove sanction or ratification of the sale on the part of plaintiffs.

The court's peremptory instruction that Daisy Harris, as between her and the plaintiffs, took the property under the foreclosure deed for the protection of her dower and for the benefit of plaintiffs, is proper under the facts disclosed in the record.

The cases cited by defendants in support of their contention that the foreclosure deed vested in Daisy Harris a fee simple title are distinguishable. *Wilson v. Vreeland, supra,* was an action for breach of covenant of warranty instituted by one claiming title under the widower-purchaser; the latter's relationship and liability to the heirs is not involved. *Winchester v. Winchester, supra,* involves a suit by a junior mortgagee to set aside a sale at which the widow was purchaser. In *Jessup v. Nixon,* 186 N.C. 100, 118 S.E. 908, the heirs sought to have voided the sale at which the widow purchased to protect her dower; they did not seek to have a trust declared. *Privette v. Morgan,* 227 N.C. 264, 41 S.E. 2d 845, was an action to set aside for fraud a special proceeding under which the widow purchased.

(2). The court below ruled in effect that Daisy Harris' possession of the subject property was not adverse to plaintiffs, and no issue of adverse possession on her part was submitted to the jury. Defendants

plead adverse possession for seven years under color of title, G.S. 1-38, and adverse possession for twenty years, G.S. 1-40.

The deed from Hoyle, trustee, to Daisy Harris is color of title. *Farabow v. Perry, supra.* Her conveyance to Grace Construction Company in fee and her devise of parcel No. 2 to her sisters in fee make clear that she claimed the *locus in quo* as her own individual property. It is undisputed that she was in the actual and exclusive possession of parcel No. 2 from the death of her husband in 1933 to 1956 — twenty-three years.

There is no evidence that Daisy Harris was in possession of, made use of, or exercised any dominion over parcel No. 1. When one enters into possession under colorable title which describes the land by definite lines and boundaries, his possession is extended, by operation of law, to the outer boundaries of his deed. *Vance v. Guy,* 223 N.C. 409, 27 S.E. 2d 117. But where two or more adjoining tracts of land are conveyed in one, or separate, deeds by separate and distinct descriptions, the actual possession by grantee of one of the tracts for seven years is not constructively extended to the other tract or tracts so as to ripen title thereto by adverse possession. *Lumber Co. v. Cedar Works,* 168 N.C. 344, 84 S.E. 523; *Loftin v. Cobb,* 46 N.C. 406; *Carson v. Mills,* 18 N.C. 546. The facts in this case do not justify any inference that Daisy Harris was in the adverse possession of parcel No. 1 or any part thereof.

But she was in the actual possession of parcel No. 2. The question to be determined is whether this possession was adverse to plaintiffs. If the possession was not adverse, her occupancy for more than twenty years did not perfect title in her. Furthermore, a deed, which is color of title, does not draw to the grantee-occupant of the land described therein the protection of the statute of limitations where the requisites of *adverse possession* are not present. *Farabow v. Perry, supra.*

Upon the death of her husband, Daisy remained in possession pursuant to her right of dower. A widow is not a tenant in common with the heirs at law; her estate is superimposed upon the estate of the heirs and is superior thereto. Even so, when she remains in possession of the whole estate under an unallotted dower right, her possession is the extension of the possession of her husband, is not deemed to be adverse to the heirs, and is in subserviency to their title. *Sheppard v. Sykes,* 227 N.C. 606, 44 S.E. 2d 54; *Ramsey v. Ramsey,* 224 N.C. 110, 29 S.E. 2d 340; *Forbes v. Long,* 184 N.C. 38, 113 S.E. 575; *Graves v. Causey,* 170 N.C. 175, 86 S.E. 1030. If a widow, in possession of the land of her deceased husband under an unallotted dower right, purchases the land at a sale to satisfy an encumbrance, the deed thus obtained by her, where there is no evidence that the character of her

possession was in any manner changed thereby and no evidence of un-equivocal notice having been given the rightful heirs of any intention to hold adversely to them, is insufficient to convert the possession of the widow, previously not adverse to the heirs, into possession adverse to them. *Farabow v. Perry, supra.* The widow can obtain no right against the heirs by virtue of the statute of limitations, at least not without some open, positive change of possession, accompanied by some manifestation of an unequivocal purpose to hold adversely. *Graves v. Causey, supra.* See also *Sheppard v. Sykes, supra.*

A life tenant who allows property to be sold to satisfy taxes or other encumbrance cannot acquire a title adverse to the remainderman or reversioner by purchasing at the sale. *Creech v. Wilder, supra.* And as stated above, dower is a life estate. *Trust Co. v. Watkins,* 215 N.C. 292, 1 S.E. 2d 853; *Holt v. Lynch,* 201 N.C. 404, 160 S.E. 469; *Chemical Co. v. Walston,* 187 N.C. 817, 123 S.E. 196.

There is no evidence that the nature of Daisy Harris' possession of parcel No. 2 ever changed, that she by unequivocal word or act ever gave notice that she was holding this parcel adversely, or that her possession thereof was inconsistent with the enjoyment of a life estate. The court below did not err in ruling that her possession was not adverse to plaintiffs.

(3). The trial judge ruled, as a matter of law, that Mary Louise Price Boquist and Helen Moore Price Hooper (hereinafter referred to as defendants Price) were not innocent purchasers for value without notice of plaintiffs' equities in the portion of parcel No. 1 described in the deed to them from Grace Construction Company, and that said deed vested in them only the dower interest of Daisy Harris in said portion. He gave the jury a peremptory instruction to this effect.

Defendants Price allege that they were innocent purchasers and took title in fee. "A person is an 'innocent purchaser' when he purchases without notice, actual or constructive, of any infirmity, and pays valuable consideration and acts in good faith." *Lockridge v. Smith,* 206 N.C. 174, 173 S.E. 36. Valuable consideration or "value" is a fair consideration, not necessarily up to full value, but a price paid which would not cause surprise. *Worthy v. Caddell,* 76 N.C. 82. The burden of proof of the "innocent purchaser" issue is upon those claiming the benefit of this principle — in this case the defendants Price. *Hughes v. Fields,* 168 N.C. 520, 84 S.E. 804; *Lumber Co. v. Trading Co.,* 163 N.C. 314, 79 S.E. 627; *Cox v. Wall,* 132 N.C. 730, 44 S.E. 635.

The testimony bearing upon the issue is summarized as follows: John Wesley Harris, plaintiff, testified that he left his father's home in 1920, he had been back only once since his father's death and that was

the same year his father died (1933), he did not visit Daisy, he had never gone out there and claimed the property and has made no effort to take possession, and he did nothing about the property until 1960. Sylvia Harris Morehead, plaintiff, testified that she lived in the vicinity of the property many years after her father died, she went to see Daisy four or five times in May and June, 1933, after her father died, the only other time she went there was in 1946 when her brother Ernest died, she never called on Grace Construction Company and informed them she owned the property, she never saw Mr. Price (father of defendants Price) before the first trial of this case, she never told him the plaintiffs owned the property, he did not see her when he was negotiating the purchase of the property, and she never told Daisy the plaintiffs owned the property. J. P. Price, father of defendants Price, testified that he was agent for his daughters in the purchase and management of the property, he visited the property about a dozen times in 1946 for the purpose of determining its value looking to its purchase, there were no structures or improvements of any kind on it, his daughters paid about $12,000 for this property and about twelve acres which bounded it on the west, he leased it to Greensboro Broadcasting Company for a right of way to its radio tower, an unpaved road was laid out across it and used in connection with the tower, he had the lot drained and graded, he collected the rent and paid the taxes, no one ever came to him and claimed title to the property, none of the plaintiffs ever notified him of any claim, he never saw any of the plaintiffs until the first trial of this case, he has not at any time discussed this property or anything connected with the property with any of the plaintiffs, and he has not had any conversation of any nature with any of the plaintiffs. Helen Moore Price Hooper, defendant, testified that the purchase and management of the property was handled entirely by her father, she has lived in Reidsville for the past sixteen years, her sister Mary Louise has lived in Minnesota for eight years.

The foregoing testimony permits the inference that at the time of the purchase by defendants Price no third party was in possession giving notice of a possible conflicting claim of title (*Perkins v. Langdon*, 237 N.C. 159, 74 S.E. 2d 634; *Insurance Co. v. Dial*, 209 N.C. 339, 183 S.E. 609; *Smith v. Fuller*, 152 N.C. 7, 67 S.E. 48), neither defendants Price nor their agent had actual notice of plaintiffs' equities, they paid a valuable consideration and purchased in good faith.

It seems clear that the court below made the challenged ruling on the theory that the record of the administration of the Wiley Harris estate was constructive notice to Grace Construction Company and defendants Price that Wiley Harris died intestate survived by children, heirs

at law, and at the time of the purchase by Daisy Harris at the fore-closure sale she was the widow of Wiley Harris and administratrix of his estate. In so concluding the court fell into error.

"A person is as a general rule charged with notice of what appears in the deeds or muniments in his grantor's chain of title, including . . . instruments to which a conveyance refers . . . Under this rule, the purchaser is charged with notice not only of the existence and legal effects of the instruments, but also of every description, recital, reference, and reservation therein. . . . If the facts disclosed in a deed in the chain of title are sufficient to put the purchaser on inquiry, he will be charged with notice of what a proper inquiry would have disclosed." 55 Am. Jur., Vendor and Vendee, § 708, pp. 1083-4; *Randle v. Grady*, 224 N.C. 651, 32 S.E. 2d 20. See also *Chandler v. Cameron*, 229 N.C. 62, 47 S.E. 2d 528; *Blankenship v. English*, 222 N.C. 91, 21 S.E. 2d 891; *Insurance Co. v. Knox*, 220 N.C. 725, 18 S.E. 2d 436; *Wynn v. Grant*, 166 N.C. 39, 81 S.E. 949; *Wittkowsky v. Gidney*, 124 N.C. 437, 32 S.E. 731. "One who uses a deed in the necessary deduction of his title, which discloses an equitable title in another, is affected with notice of the trust." *Holmes v. Holmes*, 86 N.C. 205; *Thompson v. Blair*, 7 N.C. 583. A purchaser is presumed to have examined each recorded deed or instrument in his line of title and to know its contents. He is not required to take notice of and examine recorded collateral instruments and documents which are not muniments of his title and are not referred to by the instruments in his chain of title. *Turner v. Glenn*, 220 N.C. 620, 18 S.E. 2d 197. One need only to look to the muniments of title. Vitiating facts must appear in deraigning title, on the face of deeds in the chain of title, and in one of the muniments of title. *Smith v. Fuller, supra.*

The records of the administration of the estate of Wiley Harris are not a muniment of the Price title. The links in that chain of title, so far as this case is concerned, are the three deeds to Wiley Harris, deed of trust from Wiley Harris and wife, Daisy, to Hoyle, trustee, foreclosure deed from Hoyle, trustee, to Daisy Harris, deed from Daisy Harris to Grace Construction Company, and deed from that company to defendants Price. The deed of trust is regular in form and, of course, Wiley Harris was living at the time of its execution. The foreclosure deed is regular on its face, and there is nothing in the recitals or in the trustee's report of sale to give notice that Wiley Harris was dead or that Daisy Harris was a widow or the administratrix of her husband's estate. One examining the record title had the right to assume that the foreclosure cut off any interest of Wiley Harris and those claiming under and through him. The fact that Daisy Harris purchased at the foreclosure sale was not a badge of fraud or indicia of trust. Even when

a husband pays the purchase price of land and has the conveyance made to his wife, no trust results — the law presumes a gift of the land to the wife. *Carlisle v. Carlisle*, 225 N.C. 462, 35 S.E. 2d 418. There is no requirement that a purchaser examine the records of the administration of the estate of a grantor, who, during his lifetime, made a conveyance of the property, unless some reference in the chain of title puts him on notice that the title is affected thereby. The only inquiry, with respect to the status of Daisy Harris, defendants Price were required to make was whether in 1946 when she conveyed to Grace Construction Company she had a living husband.

*Harris v. Lumber Co.*, 147 N.C. 631, 61 S.E. 604, is a case in point. The facts are: Testator deeded a tract of land to his son A in February 1892. He died in December 1892, and A qualified as executor of his will. By his will he devised a part of the tract of land in question to another son B. In 1903 A deeded to C the timber on the entire tract and the timber deed was recorded. Thereafter B sued A to remove cloud from his title; there was judgment for B and A did not appeal — C was not a party to this suit. B then sued C for damages for the cutting of timber on his part of the land. C pleaded that he was an innocent purchaser for value. This Court affirmed judgment in favor of C, and said (Letters are here substituted for names): "A obtained title to the land by deed from his father in February, 1892, and when defendant (C) took its deed from A there was no subsequent conveyance or encumbrance from A registered. It was not required to examine the book of Wills to see whether (the father) had attempted to devise to B a part of the land which he had conveyed to A."

Where a mortgagee buys at his own sale through an agent and the agent conveys to a bona fide purchaser for an adequate consideration, the latter takes a good title if he purchases before suit to set aside the sale is instituted. *Lockridge v. Smith, supra;* 37 Am. Jur., Mortgages, § 675, p. 125. When a purchaser has no notice of equities other than those disclosed by the public record, a cancelled mortgage is no notice to him of a mortgagor-mortgagee relationship between a grantor and grantee in his chain of title. *Smith v. Fuller, supra.*

We have taken note of the authorities relied on by plaintiffs; they are not applicable here. *Creech v. Wilder, supra,* involves the assignment of a bid at a mortgage foreclosure sale. Husband mortgaged his property and his wife joined to release dower. Thereafter the husband died and his wife was administratrix of his estate, paid all debts except the mortgage, and filed her final account in which she personally assumed the payment of the mortgage debt. The mortgage was foreclosed and the wife was the successful bidder. She assigned her bid to

defendant. The heirs sued to have defendant declared trustee for them. In reversing a judgment of nonsuit this Court said: "The assignee of a bid takes the same interest his assignor had, and stands in his shoes and is subject to whatever may be ordered against the original bidder and whatever defenses may be interposed against the latter." Further: "The records of administration and of report termed 'Final Account' were constructive notice to the world." It is noted here that what is said with respect to the status of the assignee of a bid is apparently in conflict with the language in *Lockridge v. Smith, supra,* at page 181. The holding of the *Creech* case on this point, if it is, as it seems, an exception to the "innocent purchaser" rule, will be limited to the factual situation there presented. Furthermore, the ground alleged therein for imposing a trust is fraud. The statement in the opinion that the records of administration "are constructive notice to the world" makes use of a general legal postulate which must be considered in the light of the circumstances to which it is applied. It means nothing more than such records are notice to all who are required by law to take notice of them.

It is true that a grantor cannot convey to his grantee an estate of greater dignity than the one he has. *Lovett v. Stone,* 239 N.C. 206, 79 S.E. 2d 479; *Creech v. Wilder, supra.* But where the defense of "innocent purchaser" is interposed and there has been a bona fide purchase for a valuable consideration, the matter which debases the apparent fee must have been expressly or by reference set out in the muniments of record title or brought to the notice of the purchaser in such a manner as to put him upon inquiry. An innocent purchaser takes title free of equities of which he had no actual or constructive notice. Parenthetically, if an innocent purchaser conveys to one who has notice, the latter is protected by the former's want of notice and takes free of the equities. *Arrington v. Arrington,* 114 N.C. 151, 19 S.E. 351.

About thirteen years elapsed from the death of Wiley Harris to the conveyance by Daisy Harris to Grace Construction Company. Until dower is allotted the right of possession is in the heirs, not the widow. *Morton v. Lumber Co.,* 178 N.C. 163, 100 S.E. 322. At any time after the death of Wiley Harris plaintiffs could have had the widow's dower allotted (G.S. 30-12), could have had from the courts a declaration of their rights made a public record in the chain of title, and could have taken possession of all the property outside the dower allotment. Equity aids the diligent, not those who sleep on their rights.

On this record defendants Price were entitled to a peremptory in struction on the "innocent purchaser" issue. There must be a new trial on this issue.

(4). The court ruled that the plea of adverse possession for seven years under color of title and twenty years without color, interposed by defendants Price, was not supported by the evidence, and it declined to submit an issue or issues of adverse possession to the jury.

This phase of the case is of importance here because of the outstanding 1/12 interest of the plaintiffs and 1/12 interest of defendant Edna Harris Garrett in the tract conveyed to defendants Price. A purchaser must take notice of the outstanding undivided interest of a tenant in common disclosed by the instruments in the chain of title. *Chandler v. Cameron, supra.* The deed of trust and the foreclosure deed conveyed only 5/6 undivided interest — of this defendants Price had notice. The question is whether the evidence makes out a *prima facie* showing of adverse possession which would ripen title as to the 1/6 interest of the cotenants.

Daisy Harris had no actual possession of parcel No. 1. Grace Construction Company purchased the part of parcel No. 1 in question here in 1946. This action was filed in 1956. Even if the Construction Company and defendants Price were in adverse possession from 1946 to 1956, no title ripened under the twenty-year statute. G.S. 1-40. This leaves only the question of adverse possession under color of title.

The possession of one tenant in common is in law the possession of all his cotenants unless and until there has been an actual ouster or a sole adverse possession of twenty years, receiving the rents and claiming the land as his own, from which actual ouster would be presumed. *Williams v. Robertson,* 235 N.C. 478, 70 S.E. 2d 692; *Winstead v. Woolard,* 223 N.C. 814, 28 S.E. 2d 507. The silent occupation of the whole property by one tenant in common, without an account to, or claim by the others, is not in law an actual ouster. "There may be an entry or possession of one tenant in common which may amount to an actual ouster so as to enable a co-tenant to bring ejectment against him, but it must be by some clear, positive and unequivocal act equivalent to an open denial of his right and to putting him out of seizin." *Dobbins v. Dobbins,* 141 N.C. 210, 53 S.E. 870. For case of actual ouster, see *Graves v. Causey, supra.* In the absence of an *actual ouster,* the ouster of one tenant in common by a cotenant will not be presumed from an exclusive use of the common property and the appropriation of its profits to his own use for a less period than twenty years, and the result is not changed when one enters to whom a tenant in common has by deed attempted to convey the entire tract. *Bullin v. Hancock,* 138 N.C. 198, 50 S.E. 621; *Page v. Branch,* 97 N.C. 97, 1 S.E. 625.

Defendants Price did not reside on the land, nor did their agent or tenant. They placed no buildings or structures thereon. They had it drained and graded and occasionally cleared it of rubbish and mowed it. They leased to Greensboro Broadcasting Company an unpaved road or right of way for ingress and egress to and from a radio tower on adjacent property, collected the rents and paid taxes. Such possession and use did not amount to an actual ouster; it was merely the silent occupation of the property, without an account to or claim by the other tenants in common. The possession was not for as much as twenty years, the period necessary to raise the presumption of ouster. The court properly refused to submit the issue of adverse possession.

The trial and judgment below have established the following rights with respect to the lands involved in this action, and these rights are hereby affirmed by us:

(1)   Plaintiffs are the owners in fee simple of parcel No. 2.

(2)   Plaintiffs are the owners in fee simple of 11/12 undivided interest in that part of parcel No. 1 not embraced in the description in the deed from Daisy Harris to Grace Construction Company, dated 1 June 1946, and recorded in Book 1122, page 385, Registry of Guilford County.

(3)   Defendant Edna Harris Garrett is the owner in fee simple of 1/12 undivided interest in that part of parcel No. 1 not embraced in the description in said deed from Daisy Harris to Grace Construction Company.

(4)   Defendant Edna Harris Garrett is the owner in fee simple of 1/12 undivided interest in the tract of land described in said deed from Daisy Harris to Grace Construction Company.

(5)   Plaintiffs are the owners in fee simple of not less than 1/12 undivided interest in the tract of land described in said deed from Daisy Harris to Grace Construction Company.

The cause is remanded for a new trial upon the issue raised by defendants Price in their allegation that they are innocent purchasers for value.

The costs of this appeal will be paid one-half by plaintiffs and one-half by defendants Cora Jane Lea and Lettie Ora Walker.

Error and remanded.