MIRIAM GAITHER THOMPSON, RUTH LITAKER HAYDEN, SALLY M. LITAKER AND HELEN BAILEY v. HAROLD L. WATKINS, SR., EXECUTOR OF THE ESTATE OF ANNA L. LITAKER; HAROLD L. WATKINS, SR., INDIVIDUALLY, AND WIFE JUANITA WATKINS; SADIE W. CARR AND HUSBAND FRANK CARR; MILDRED W. BOST BLACK AND HUSBAND FLORENCE BLACK; AND WALTER C. LITAKER, INCOMPETENT, BY HIS GUARDIAN AD LITEM, WESLEY B. GRANT

No. 80

(Filed 30 August 1974)

1. Estates § 3— life tenant — quasi-fiduciary relationship with remainderman

A life tenant's relation to the remainderman is a quasi-fiduciary one in the sense that he must exercise reasonable care to preserve the property intact for transmission to the remainderman and in that he can legally do nothing to prejudice or defeat the estate of the remainderman, but the life tenant is not precluded from acquiring by gift or purchase from the remainderman his estate in remainder.

2. Estates § 3— life tenant — duty to pay taxes

The life tenant has the obligation to list and pay the taxes on the property; therefore, he cannot defeat the estate of the remainderman by allowing the land to be sold for taxes and taking title in himself by purchase at the tax sale.

3. Estates § 3— life tenant — duty to pay interest on prior encumbrance

Absent a different stipulation in the instrument creating the life estate, a life tenant owes a duty to the remaindermen to pay the interest accruing during the period of his estate on a mortgage encumbrance given prior to the creation of the life estate and remainder or reversion, at least to the extent of the income or rental value of the property.

4. Estates § 3— life tenant — payment of encumbrance — reimbursement from remaindermen

In respect to a prior mortgage lien on the whole estate, unless obligated by the instrument creating his estate, the life tenant's only duty to the remainderman is to pay the interest, and, when a life tenant pays off an encumbrance to preserve his estate, he is entitled

to reimbursement from the owners of future interests to the extent of their interest in the property which was subject to the encumbrance.

5. **Estates § 3— life estate — mortgage due — payment by remaindermen**

When a mortgage falls due during the period of the life estate, the life tenant and reversioner or remainderman must each pay his due proportion of this amount.

6. **Estates §§ 3, 4— foreclosure — purchase by life tenant — contribution from remaindermen**

Where a mortgage, deed of trust or other encumbrance on the whole estate, the burden of which does not fall solely on the life tenant, is foreclosed, the life tenant may purchase the property at the sale in order to protect his interest; yet he cannot purchase the fee on a foreclosure sale so as to exclude the remainderman if the remainderman is willing to contribute his share of the cost of acquisition within a reasonable time.

7. **Estates § 3— life tenant — purchase of land at foreclosure sale**

When a remainderman for his own use places an encumbrance against his vested interest and defaults, purchase by the life tenant for his sole benefit at the foreclosure sale is not inconsistent with his quasi-trustee relationship to the remainderman provided the transaction is free from fraud and the life tenant had no part in bringing about the foreclosure.

8. **Estates § 3— life tenant — power to encumber estate**

A life tenant may mortgage his own interest but, unless given the power to convey in the instrument creating his estate, he cannot encumber the entire estate without the joinder of the remainderman; further, a person occupying land under a deed effective only as to the life interest does not hold adversely to the remaindermen prior to the death of the life tenant.

9. **Mortgages and Deeds of Trust § 28; Estates § 4— life estate — foreclosure sale — purchase by life tenant**

Where testator devised the property in question to his widow for her lifetime with the remainder to his children, the plaintiffs, the widow bought the property at a foreclosure sale, and plaintiffs did not contribute to the widow their proportionate parts of the purchase price within a reasonable time after she bought the land, the plaintiffs lost the right to redeem their interests in the land, and the devisees of the widow were owners of the property free of any claims by the heirs or devisees of the testator.

ON *certiorari* to review the decision of the Court of Appeals affirming the judgment of *Armstrong, J.,* rendered 5 July 1973 in a cause heard at the March 1973 Session of the Superior Court of CABARRUS.

This action to determine the title to a lot in the City of Concord, fronting 50 feet on the east side of Tournament Street

and extending back 276 feet, was heard by Judge Armstrong upon the agreed statement of facts summarized below:

Walter R. Litaker (testator) acquired the land in controversy on 22 May 1912. At the time of his death on 6 March 1949 testator was the owner of the property, subject only to a deed of trust to Cabarrus County Savings and Loan Association.

By his will, duly probated and recorded in the office of the Clerk of the Superior Court of Cabarrus County, testator devised the lot to his wife, Anna L. Litaker (the widow), during her life or widowhood, "with the understanding" that his two daughters, Helen L. Bailey and Sally M. Litaker be allowed to operate their respective businesses, a beauty parlor and a cafe, on the premises upon the payment of a reasonable rent to the widow. Upon the termination of the widow's life estate the will provides that the two daughters "shall be permitted to continue to operate the beauty parlor and cafe on said homeplace premises during either or both their lives, and keep up all necessary repairs to and pay all taxes and insurance on said homeplace during the period of time either or both continue to operate the cafe and beauty parlor." In addition each shall continue to pay a reasonable rent to testator's executrix as long as they operatae a business on the premises, "which rent my executrix shall divide equally among my children of sound mind, including the two paying said rent."

Upon the death of Helen L. Bailey and Sally M. Litaker, testator devised the lot to four of his children, Edgar E. Litaker, Marion M. Gaither, Walter C. Litaker, and Ruth E. Litaker. In the event of the death of any one of the four named children the share of that one would devolve upon the survivors.

During the lifetime of the widow and daughters Helen L. Bailey and Sally M. Litaker, testator directed that any and all of his children, including his daughter, Maude A. Turner (not otherwise mentioned in the will), be permitted to occupy the residence part of the main dwelling as a home, "and thereafter as long as they all shall live." He further directed that his personal property be applied first to the payment of funeral and administration expenses and the remainder divided equally among the widow and his children living at his death. He appointed his daughter, Helen L. Bailey, executrix of his will.

Helen L. Bailey qualified as executrix on 16 March 1949. On 29 February 1952 the clerk of the superior court audited and

approved her final account. Prior to that date G. H. Hendrix, trustee, foreclosed the deed of trust to Cabarrus County Savings and Loan Association on the property in controversy *because of a default in the payment of the principal of the indebtedness it secured.* At the foreclosure sale the widow (the life tenant) purchased the property for the sum of $3,450 and, on 25 July 1950, G. H. Hendrix, trustee, conveyed the property to her.

The final account of Helen L. Bailey, executrix of Walter R. Litaker, shows the following pertinent facts:

Assets in the amount of $5,434.70 came into the hands of the executrix. Of this sum, $2,294.83 represented the "balance from sale of house and lot under foreclosure sale"; $941.87, represented "amount advanced by Anna Litaker." After paying the debts of the estate and the cost of administration, including $513.66 to "Helen L. Bailey, commissions as Executrix," the account shows that $759.88 of the $941.87 "advanced by her for payment of debts" was refunded to Anna Litaker. Thus, it appears that, to enable the executrix to discharge all of testator's debts, the widow made up a deficit of $181.99.

The widow died testate on 6 October 1969. She devised the property in controversy to defendants Sadie W. Carr, Mildred W. Bost (Black) and Harold L. Watkins, Sr., hereinafter referred to as defendants.

Plaintiffs and defendant Walter C. Litaker, incompetent, are the surviving devisees of testator. Edgar Litaker died in 1965 unmarried and without issue. Walter C. Litaker who was declared incompetent on 4 June 1928, was made a party-defendant and appears by his duly appointed guardian ad litem. By this action plaintiffs seek an adjudication that they and defendant Walter C. Litaker are the owners and entitled to the possession of the lot described in the will of testator.

Upon the stipulated facts, Judge Armstrong adjudged that defendants own no interest in the property; that plaintiffs, Miriam Gaither Thompson (Marion M. Gaither), Ruth Litaker Hayden, and defendant Walter C. Litaker (hereinafter referred to as the plaintiffs) own the lot in fee simple, subject to the right of Helen L. Bailey and Sally M. Litaker to operate a beauty parlor and cafe on the premises. Upon appeal, the Court of Appeals affirmed the judgment, *Thompson v. Watkins,* 20 N.C. App. 717, 202 S.E. 2d 487 (1974), and we allowed certiorari.

Thompson v. Watkins

*Williams, Willeford, Boger & Grady for plaintiff appellees.*

*Hartsell, Hartsell & Mills by W. Erwin Spainhour for defendant appellants.*

SHARP, Justice.

The question presented is whether the widow, at the time of her death, owned the land in controversy in fee simple or held it as trustee for plaintiffs. To answer this question we must review the relationship between a life tenant and remainderman and the duties each owes the other with relation to encumbrances on the land in which they hold successive interests.

[1] A file tenant's relation to the remainderman is a quasi-fiduciary one in the sense that he must exercise reasonable care to preserve the property intact for transmission to the remainderman and in that he can legally do nothing to prejudice or defeat the estate of the remainderman. 1 Tiffany, Real Property § 68 (3rd ed. 1939); 31 C.J.S., *Estates* § 34 (1964); 51 Am. Jur. 2d, *Life Tenants and Remaindermen* §§ 27, 28 (1970). "[N]o such fiduciary relations exist between a life tenant and his remainderman as to make applicable to their transactions the rules of equity which govern trustees and cestuis que trustent, and preclude the life tenant from acquiring by gift or purchase from the remainderman his estate in remainder." *Muzzy v. Muzzy,* 364 Mo. 373, 380, 261 S.W. 2d 927, 931 (1953).

[2] The life tenant has the obligation to list and pay the taxes on the property. G.S. 105-302(c) (8); G.S. 105-384. *See Smith v. Smith,* 261 N.C. 278, 134 S.E. 2d 331 (1964); *Meadows v. Meadows,* 216 N.C. 413, 5 S.E. 2d 128 (1939). Therefore he cannot defeat the estate of the remainderman by allowing the land to be sold for taxes and taking title in himself by purchase at the tax sale. *See Farabow v. Perry,* 223 N.C. 21, 26, 25 S.E. 2d 173, 176 (1943); *Creech v. Wilder,* 212 N.C. 162, 166, 193 S.E. 281, 284 (1937); *Miller v. Marriner,* 187 N.C. 449, 457, 121 S.E. 770, 774 (1924); 51 Am. Jur. 2d, *supra,* § 255; 1 Tiffany, *supra,* § 68. The life tenant's purchase at a tax sale "is regarded as a payment of the tax, and the owner of the future interest is regarded as still holding under his original title." Simes and Smith, The Law of Future Interests, § 1700 (2d ed. 1956).

[3] In addition to the taxes, absent a different stipulation in the instrument creating the life estate, a life tenant owes a duty

to the remaindermen to pay the interest accruing during the period of his estate on a mortgage encumbrance given prior to the creation of the life estate and remainder or reversion, at least to the extent of the income or rental value of the property. Simes and Smith, *supra,* § 1697. *See* 31 C.J.S., *Estates* § 48 (1964) ; 51 Am. Jur. 2d, *supra,* § 277.

"Being bound to pay the taxes and interest, he [a life tenant] cannot acquire a tax title or good title based on his failing to pay taxes or interest. He is a trustee to this extent." *Miller v. Marriner, supra* at 457, 121 S.E. at 774. If an encumbrance is foreclosed because of the default on the part of the life tenant in the payment of interest or otherwise, and he becomes the purchaser at the foreclosure sale, "he thereby restores the life estate and the estate in the remainder." 1 Tiffany, *supra* § 68. *See Morehead v. Harris,* 262 N.C. 330, 338, 137 S.E. 2d 174, 182 (1964) ; Restatement of Property §§ 129, 130, 131, 149 (1936) ; 31 C.J.S., *Estates* § 35 (1964).

[4]   In respect to a prior mortgage lien on the whole estate, unless obligated by the instrument creating his estate, the life tenant's only duty to the remainderman is to pay the interest. He is under no obligation to pay any part of the principal. 31 C.J.S., *Estates* § 48 (1964) ; 51 Am. Jur. 2d, *supra,* § 275. When a life tenant, in order to preserve his estate, "pays off an encumbrance upon the fee or estate property, whether the encumbrance is a mortgage, lien, charge or other type of encumbrance, he is entitled to reimbursement from the owners of future interests, such as reversioners or remaindermen, to the extent of their interest in the property which was subject to the encumbrance." 51 Am. Jur. 2d, *supra,* § 275. *See* 31 C.J.S., *Estates* § 48 (1964) ; 1 Tiffany, *supra,* § 63. He "has a lien on the future interest for the amount which its owner is under a duty to pay." Simes and Smith, *supra,* § 1697. *See Farabow v. Perry, supra* at 26, 25 S.E. 2d at 176; *Creech v. Wilder, supra* at 166, 193 S.E. at 284.

[5]   When a mortgage falls due during the period of the life estate the question arises: Who has the burden of paying the principal? In Simes and Smith, The Law of Future Interests, § 1697 (2d ed. 1956), the question is answered as follows: "Courts have generally indicated that life tenant and reversioner or remainderman must each pay his due proportion of this amount. To require them to share the burden would seem to be just. By paying off the mortgage, the value of both life estate and future interest have been increased in proportion to their

respective values. Hence it would seem that the due proportion would be based upon the respective values of life estate and the remainder or reversion. . . . The cases, however, are not clear as to what a due proportion of the principal is."

The foregoing statement accords with the Restatement of Property § 132 (1936). Explanatory Comment e. under this section says that the proportionate contributions of the life estate and future interests to the payment of an encumbrance "are computable by employing the mortality tables and rate of interest regularly employed in valuing an estate for life in the state wherein the affected land is located." *Id.* at p. 433. *See Faulkenburg v. Windorf,* 194 Minn. 154, 157, 259 N.W. 802, 804 (1935).

In Comment a. to § 132, *supra,* it is noted that absent some special provision in the instrument creating the estate for life, the life tenant has no duty to contribute from his other assets to the payment of the encumbrance. "He can, however, be compelled to choose between giving up his estate for life and making a contribution, from his other assets, to the new investment of capital." *Id.* at p. 431.

[6]   When a mortgage, deed of trust or other encumbrance on the whole estate, the burden of which does not fall solely on the life tenant, is foreclosed, the life tenant may purchase the property at the sale in order to protect his interest. Yet he cannot purchase the fee on a foreclosure sale so as to exclude the remainderman *if* the remainderman is willing to contribute his share of the cost of acquisition within a reasonable time. "It is uniformly held that the purchase of land by a life tenant at a foreclosure sale under a mortgage or deed of trust will be deemed to have been made for the benefit of the remainderman or reversioner if he contributes his portion of the purchase money within a reasonable time." 51 Am. Jur. 2d, *supra,* § 280. *See Witcher v. Hanley,* 299 Mo. 696, 253 S.W. 1002 (1923); *Hager v. Connolly,* 204 Ky. 147, 263 S.W. 723 (1924); *Ward v. Chambless,* 238 Ala. 165, 189 So. 890 (1939); *Drane v. Smith,* 271 Ala. 54, 122 So. 2d 135 (1960); 51 Am. Jur. 2d, *supra,* § 279; 1 Tiffany, *supra,* § 68.

Courts have not attempted to mark the limits of "a reasonable time" for contribution. "Each case depends on its own peculiar facts." *Witcher v. Hanley, supra* at 704, 253 S.W. at 1004. "What constitutes reasonable time depends upon the circumstances of each case." *Ward v. Chambless, supra* at 171, 189 So.

at 894. *See Drane v. Smith, supra* at 58, 122 So. 2d at 138; *Fleming v. Brunner*, 224 Md. 97, 106, 166 A. 2d 901, 906 (1960). In any event, when a life tenant purchases the fee at a foreclosure sale his "new deed . . . is not regarded as giving the remainderman an interest in the land unless and until the latter pays his proportionate share of the incumbrance." Simes and Smith, *supra*, § 1700.

The Restatement of Property § 150 (1936) states the rule as follows:

"When an estate for life and a future interest exist in the same land and both interests become subject to sale for the collection of a sum of money, and, as between the owner of the estate for life and the owner of such future interest this whole sum is payable partly by each of such owners, then, the owner of the estate for life, who acquires the interests sold on such sale, owns the interests so acquired subject to the power of the owner of the future interest to redeem such sale."

As explained in Comment a. to Section 150, *supra*, when the whole estate becomes subject to sale for the collection of money payable partly by the owner of each estate and the life tenant purchases at the foreclosure sale, he acquires a new ownership coextensive with the interest sold. His new interest, however, is subject to the equitable power of the owner of the future interest to redeem from such sale, that is, to share in its benefits by contributing his share of the purchase price. As previously noted, the life tenant acquires no such interest when he purchases at a foreclosure sale for the collection of taxes, interest, or other obligation primarily charged against the estate for life.

[7] Of course, when only a future interest in the land is affected by a foreclosure sale, the owner of the estate for life has no disability under Section 150. Restatement of Property § 150, Comment e. (1936). Thus, when a remainderman for his own use places an encumbrance against his vested interest and defaults, purchase by the life tenant for his sole benefit at the foreclosure sale is not inconsistent with his quasi-trustee relationship to the remainderman provided the transaction is free from fraud and the life tenant had no part in bringing about the foreclosure. *Muzzy v. Muzzy, supra.*

In this case the decision of the Court of Appeals was that the widow held the property as trustee for herself and the owners of the future interest and, at her death, title passed to plain-

tiffs by operation of law. As authority for this holding three cases are cited in the court's opinion: *Morehead v. Harris,* 262 N.C. 330, 137 S.E. 2d 174 (1964); *Farabow v. Perry,* 223 N.C. 21, 25 S.E. 2d 173 (1943); and *Creech v. Wilder,* 212 N.C. 162, 193 S.E. 281 (1937). The facts in each of these cases differ so materially from those of this case that we do not regard them as decisive here. However, an analysis of them and also of *Miller v. Marriner,* 187 N.C. 449, 121 S.E. 770 (1924), a case cited by defendant appellants, seems appropriate. No other North Carolina cases containing pronouncements on the question posed have been called to our attention.

In *Creech v. Wilder, supra,* Creech *and* wife, Lillie, executed a mortgage deed on about 40 acres belonging to Creech to secure an indebtedness of $2,500 due 1 January 1922. Creech died intestate in January 1927 leaving Lillie and the plaintiffs (his six children) as his heirs-at-law. Lillie qualified as his administratrix. On 19 March 1930 she filed a purported "Final Account" in which she reported the exhaustion of Creech's personalty and the payment of all debts except the "land debt," *which she has assumed.* However, in November 1933 the mortgage was foreclosed and, at the public sale, Lillie became the final bidder at the price of $390, and "assigned her bid for value to the defendant." The bid was not raised and defendant obtained a deed to the property.

In August 1935 the plaintiffs sued to have themselves declared the owners of the land subject to Lillie's dower and to the payment of $390 to defendant less the rental value of the land for the year 1934. The plaintiffs alleged that Lillie, after personally assuming the payment of the mortgage in her final account as administratrix, had procured the foreclosure of the mortgage for the purpose of defrauding the plaintiffs of their inheritance; that the land was worth $2,000 at the time of its sale for $390 and had a rental value of $200 per year; that on account of Lillie's fraud, her relation to the property as doweress and her duty as administratrix to protect the rights of the plaintiffs, she acquired the property as trustee for herself as widow and for the plaintiffs as heirs at law of the intestate; and that her assignee, the defendant, took with knowledge of the facts and holds the land as trustee for the plaintiffs. At the close of the plaintiffs' evidence, which tended to establish their allegations, the trial judge allowed the defendant's motion of nonsuit.

Thompson v. Watkins

On appeal the nonsuit was reversed. The court said that (1) Lillie, as administratrix, occupied a position of trust with relation to the heirs of intestate and, having taken upon herself the obligation to pay the unsettled mortgage debt, she continued in a position of trust. (2) Her duties and obligations as administratrix continued until her intestate's debts were paid or the assets of the estate exhausted, and she should have applied to the superior court for authority to sell the land to make assets to pay debts. (3) "If she had taken title to the land pursuant to the mortgage sale, she would have held that title in trust for the benefit of herself, as widow [doweress], and the heirs subject to reimbursement." (4) The evidence that the value of the land was greatly in excess of the bid was competent upon the issue of fraud, and gross inadequacy of consideration, when coupled with any other inequitable element, will induce a court of equity to interpose and do justice between the parties.

Incidentally the court quoted in part the following two excerpts from 21 C.J., *Estates* § 74 (1920). The portions omitted from the court's quotation (shown by dots in the opinion) are here bracketed: "[a life tenant may be a purchaser at a sale to satisfy an encumbrance. But] neither a life tenant, nor one claiming under him, who allows the property to be sold for taxes or the satisfaction of an encumbrance, [or the interest thereon] can acquire a title adverse to the remainderman or reversioner by purchasing at the sale [himself, or through an intermediary, or by obtaining a conveyance of the title acquired by another purchaser at such sale."]

"If the life tenant purchases [an outstanding title or encumbrance, or purchases] the property at a sale to satisfy an encumbrance, he cannot hold such [title, encumbrance, or] property for his exclusive benefit, but will be deemed to have made the purchase for the benefit of himself and the remainderman or reversioner, [*in case the latter will contribute his share of the sum paid by the life tenant, and does so within a reasonable time.*] If the life tenant pays more than his proportionate share, he simply becomes a creditor of the estate for that amount." (Emphasis added.)

Decision in *Creech v. Wilder, supra,* was controlled by the long established rule in this jurisdiction that the purchase of a decedent's land by his executor or administrator at a sale which he procured, or which was brought about by another, is fraudulent in law even if he pays full value for the property. "It will,

as of course, be set aside at the instance of the parties interested." *Pearson v. Pearson,* 227 N.C. 31, 33, 40 S.E. 2d 477, 479 (1946). *See Smith v. Smith, supra. A fortiori,* it will be set aside when the purchase price is so grossly inadequate as to be prima facie evidence of fraud. *Wall v. Ruffin,* 261 N.C. 720, 136 S.E. 2d 116 (1964); *Cowart v. Honeycutt,* 257 N.C. 136, 125 S.E. 2d 382 (1962). Since he occupies a fiduciary relationship to the heirs and creditors of his decedent, an administrator cannot buy the trust property either directly or indirectly. And if he does so, he may be charged with the full value, or the sale may be declared void at the election of the *cestui que trust,* and this, without regard to the question of fraud, public policy forbidding it. *Davis v. Jenkins,* 236 N.C. 283, 286, 72 S.E. 2d 673, 675 (1952). We also point out that Lillie, having herself signed the note, was personally liable for its payment.

In *Farabow v. Perry, supra,* the widow of intestate Hardy, who died in 1923, remained in possession of her husband's homeplace without the allotment of dower and with the acquiescence of her husbands' heirs, his brother and sister. *In 1929 the widow mortgaged the property for $389.75. In 1930 the mortgage was foreclosed and the widow "bought" the property for $400 and received "a purported mortgagee's deed."* Thereafter she remained in possession of the premises until her death in 1939. In 1937 she gave a deed of trust on the property which was unpaid at her death. In February 1942 Hardy's heirs conveyed the property to the defendant. In March 1942 the trustee in the 1937 deed of trust purported to foreclose the deed of trust under its power of sale and to convey the property to the plaintiff, the last and highest bidder at the sale.

In the resulting lawsuit this court held that the grantee of Hardy's heirs owned the property. The premise was that a widow, while in possession of land in which "she is entitled to dower, but which dower was never set apart to her, cannot perfect title to the premises in herself by claiming adverse possession under color of title for seven years, where it appears she mortgaged the premises, intentionally defaulted, and purchased the property at her own mortgagees' sale in order that she might obtain a deed on which she could rely as color of title." *Id.* at 24-25, 25 S.E. 2d at 175. The court again quoted the excerpt from 21 C.J., *Estates* § 74 (1920) as it appeared in *Creech v. Wilder, supra.*

[8] The facts in *Farabow v. Perry, supra,* obviously have no relation to those we consider here. A life tenant may mortgage his own interest but, unless given the power to convey in the instrument creating his estate, he cannot encumber the entire estate without the joinder of the remaindermen. A mortgage by the life tenant purporting to cover the fee is effective as to the life estate only. Further, a person occupying land under a deed effective only as to the life interest does not hold adversely to the remaindermen prior to the death of the life tenant. *Lovett v. Stone,* 239 N.C. 206, 79 S.E. 2d 479 (1954) ; Restatement of Property § 124 (1936) ; 31 C.J.S., *Estates* § 55 (1964). This being true, the statute of limitations with respect to an action for possession of the land will not begin to run against the remaindermen until after the expiration of the life estate. *Narron v. Musgrave,* 236 N.C. 388, 73 S.E. 2d 6 (1952).

In *Morehead v. Harris, supra,* Harris *and* wife, Daisy, executed a deed of trust upon his land (their homeplace) to secure a debt of $200 in November 1927. Harris died intestate in May 1933 without having paid the indebtedness. Daisy was appointed his administratrix, and she continued to occupy the property without the allotment of dower. In August 1933 the deed of trust was foreclosed and Daisy bought the property for $217.07, the balance due on the indebtedness plus the costs of foreclosure. In 1956 the plaintiffs (children of Harris' first marriage) sued to obtain an adjudication that they owned the property in fee simple. Daisy died testate in 1960. In her will she devised the property to her sisters. The superior court entered judgment that plaintiffs owned the property and were entitled to possession.

On appeal this court held that "under the facts disclosed in the record," as between Daisy and the plaintiffs, she took the property under the foreclosure deed for the protection of her dower and for the benefit of plaintiffs. The rationale was: (1) An administrator cannot purchase the property of the estate at his own sale or at a sale brought about by another unless he has a personal interest to protect. (2) Although she was Harris' administratrix Daisy had the right to purchase at the foreclosure sale to protect her dower but, as against Harris' heirs, her rights under the purchase extended only to the protection of the interest for which the purchase was made. (3) Daisy's possession under her deed was not adverse to the plaintiffs.

The comments heretofore made with reference to *Creech v. Wilder, supra,* are equally applicable to *Moorehead v. Harris,*

*supra.* Daisy was not only the administratrix of her husband but she was jointly obligated with him on the note. At the foreclosure sale she purported to acquire the property for the balance due on the note.

In *Miller v. Marriner, supra,* the facts were these:

On 1 January 1890 Blount conveyed to Jane Marriner land, later known as the Marriner Hotel Property, for the recited consideration of $259. On the same day Jane and husband, L. C. Marriner, mortgaged the property to Blount to secure Jane's bond of even date in the amount of $259, payable one, two, and three years thereafter with interest at 8%. Jane died on 18 May 1890. Her husband and two children, the plaintiffs, survived her. At the time of her death an eight-room house had been or was being constructed on the mortgaged property. On 9 January 1893 "two payments of principal" were past due, and Blount foreclosed the mortgage. At the sale Fitchett became the last and highest bidder for the sum of $321. (This figure appears to be the principal and interest due on the note.) On the same day, for the sum of $321, Fitchett conveyed the property to Marriner, who continued to live on it. Marriner died on 3 May 1921, having devised the property to his third wife and her children, the defendants.

On 26 September 1921 the plaintiffs brought this action seeking an adjudication that Marriner had acquired the property in trust for the plaintiffs after the expiration of his life estate as a tenant by the curtsey. The defendants pled the plaintiffs' laches and Marriner's adverse possession for more than twenty-one years; that he had built the hotel upon the property; that Jane had never had a separate estate and had paid nothing for the conveyance made to her. At the trial defendants offered no evidence. The record contains no evidence that the plaintiffs ever tendered to Marriner their proportionate share of the encumbrance.

In answer to specific issues the jury found that Jane owned the property at her death; that at the time of the foreclosure the amount due on the mortgage was $321.73, which amount was the fair value of the property; that Marriner did not procure the sale; that Fitchett did not bid in the property for him; and that Marriner did not acquire the land in fraud of plaintiffs' rights.

Thompson v. Watkins

On appeal the judgment for defendants entered upon the verdict was affirmed. In an opinion by Justice Clarkson, after adverting to the rule which prevents a life tenant from acquiring a title to the property based on his failure to pay the taxes or the interest on a mortgage indebtedness, the Court said: "If a sale is made by a person who holds a mortgage to pay the *principal of the mortgage,* and the life tenant purchases it, it is a question of good faith and whether the life tenant fraudulently caused, procured or took advantage of the sale to the prejudice of the rights of the remaindermen. The decisions are in contrariety, but we think the position here taken consonant ' with justice and fair dealing. In the instant case this was an issue of fact for the jury, and not a question of law." *Id.* at 457, 121 S.E. at 774.

In the opinion it was specifically noted that the suit was not instituted for eighteen years after the youngest plaintiff became of age; that Marriner had recorded his deed from Blount immediately; that thereafter he occupied and claimed the property as his own for twenty-eight years before his death; that plaintiffs had delayed the suit charging their father with fraud until after his death, the deaths of Blount, Fitchett, and all the "witnesses by whom the *bona fides* of the transaction could be proven." (The Court apparently assumed that such witnesses had once been available.) The opinion concluded with the statement that courts of equity have always wisely refused to entertain stale claims.

In *Miller v. Marriner, supra,* the jury apparently accomplished its purpose to do justice in its sight by finding those facts which, under the court's instructions and theory of the case, would enable the defendants to retain possession of the land. A sympathetic appellate court took the view that "twelve honest men have decided the cause." Suffice it to say the result obtained is consistent with the law as stated herein.

In the case now before us the life tenant, the widow, was not the executor or administrator of the estate of her husband, whose deed of trust on the property was foreclosed. Her purchase of the property, therefore, was not fraudulent in law, subject to upset at the option of plaintiffs. It does not appear from the record that she was personally liable for the debt which the deed of trust secured; the inference is that she was not. There is no intimation that she procured, manipulated, or suggested the foreclosure. She purchased the property at a public sale,

duly advertised and conducted by the trustee. Neither the plead-ings nor record contain any suggestion that she paid less than the fair market value of the property. There is no hint of any fraud or unfair dealing on her part.

The circumstances were such that plaintiffs must have had full knowledge of the widow's purchase, the conditions under which the sale was made, and the disposition of the proceeds. The conclusion is inescapable that the deed of trust was fore-closed to make assets to pay the debts of testator. No doubt the executrix, who was represented by counsel, was advised that this would be a less expensive procedure than a pecial proceed-ing for that purpose. The trustee, after paying the balance due on the note and the costs of the foreclosure, turned over the net proceeds of the sale ($2,291.83) to the executrix, plaintiff Helen Bailey. That sum being insufficient to pay the testator's debts and the cost of administering his estate—including commissions in the amount of $513.66 to the executrix—the widow advanced the difference between the estate's assets and liabilities in the about of $181.99. Testator's children made no contribution to his estate either in services or cash. Nor, during the nineteen years between the date the widow bought the property and the date of her death, did plaintiffs ever offer to pay her their proportionate part of the purchase price of the land. In this case the equities are not with plaintiffs.

Plaintiffs' theory seems to be that a life tenant who pur-chases the property at a foreclosure can never hold it for his own exclusive benefit. They have misapprehended the law.

Certainly, in this case, had the property been sold in a special proceeding brought by the executrix to make assets, to which all interested persons were parties, the widow could have purchased the property with leave of court and obtained a fee simple title upon the payment of full value. See *Morehead v. Harris, supra* at 335, 137 S.E. 2d at 180; *Privette v. Morgan,* 227 N.C. 264, 41 S.E. 2d 845 (1947); *Froneberger v. Lewis,* 79 N.C. 426 (1878). In the light of hindsight it now seems that would have been the preferable procedure. However, on this record, it does not appear that the consequences to plaintiffs would have been different.

[9] We hold that plaintiffs, the owners of the future interests following the widow's life estate, in order to preserve their rights in the property, were required to contribute to the widow their

proportionate parts of the purchase price within a reasonable time after she bought the land at the foreclosure sale. This they did not do. At the time of the widow's death plaintiffs had long ago lost the right to redeem their interests and to assail her title. Therefore, as her devisees, defendants are the owners of the property free of any claims by the heirs or devisees of the testator, Walter R. Litaker.

The decision of the Court of Appeals is

Reversed.