ELEANOR S. PEGG v. ERVIN JONES AND JOHN DOES 2-10 AND JANE DOE 1-10

No. COA07-147

(Filed 4 December 2007)

**1. Adverse Possession— fee simple title—hostility**

The trial court did not err by awarding plaintiff fee simple
title to the pertinent two-acre tract of property even though
defendant contends he owned the property by virtue of ad-
verse possession, because: (1) even if it is assumed that defend-
ant's parents were holding the property adversely on 3 June 1965
and that the altercation with the shotgun occurred on 31
December 1965, the trial court's finding of fact that there was no
adverse possession from the shotgun incident until 1994 neces-
sarily defeated defendant's claim of adverse possession; (2)
the finding that defendant and/or his predecessors did not meet
the hostility requirement for adverse possession after the 1965
shotgun incident until 1994 was supported by competent evi-
dence when the deed granted defendant's parents a life estate
in the property, plaintiff submitted an affidavit to the trial court
that stated defendant himself had never asserted to her that he
owned the property or was holding it adversely at any point, and
defendant's parents acknowledged their limited life interest in
the real estate in January 1986 and December 1992 on two
separate deeds of trust and on a deed of easement in Novem-
ber 1992 with all three documents being notarized; (3) while the
evidence with the shotgun was some evidence as to hostility, the
evidence was competent to support the trial court's finding of
fact that defendant's parents were not holding the property
adversely against plaintiff in 1965; and (4) the payment of taxes
by defendant and his family does not provide any evidence as to
hostility since life tenants have the obligation to list and pay
taxes on the property.

**2. Appeal and Error— preservation of issues—unnecessary to
determine issue based on prior ruling**

The issue of whether the trial court erred in determining that
neither defendant nor his predecessors in interest held the prop-
erty under known and visible lines and boundaries does not need
to be determined because the Court of Appeals already con-
cluded that the trial court did not err by concluding that defend-

ant and his predecessors in interest did not hold the property adversely for the requisite twenty years.

Judge TYSON dissenting.

Appeal by defendant Ervin Jones from judgment entered 6 October 2006 by Judge Dennis J. Winner in Orange County Superior Court. Heard in the Court of Appeals 12 September 2007.

*Alexander & Miller, LLP, by Sydenham B. Alexander, Jr. and Meg K. Howes, for plaintiff-appellee.*

*Levine & Stewart, by John T. Stewart and James E. Tanner III, for defendant-appellant.*

HUNTER, Judge.

Ervin Jones ("defendant") appeals the trial court's order determining that Eleanor S. Pegg ("plaintiff") is the fee simple owner of a two-acre tract of property in Orange County, North Carolina. After careful consideration, we affirm the ruling of the trial court.

This is the second appeal to this Court regarding a property dispute between plaintiff and defendant. *See Pegg v. Doe*, 178 N.C. App. 742, 632 S.E.2d 600 (2006) (unpublished) (vacating and remanding the trial court's order for further findings of fact). On 11 May 2004, plaintiff filed a complaint against defendant to quiet title and for summary ejectment. Plaintiff asserted she was the fee simple owner of fifty acres in Orange County, North Carolina ("the property"). On 7 July 2004, defendant answered and counterclaimed he owned a two-acre tract of the property through adverse possession.

On 13 June 2005, the matter was heard before the trial court. The evidence tended to show defendant's grandparents, Ed and Lourinda Jones ("Ed and Lourinda"), owned the property prior to 1914. Ed and Lourinda orally promised to give each of their ten children five acres of the fifty-acre tract. Cecil and Alease Jones ("Cecil and Alease"), defendant's father and mother and Ed and Lourinda's son and daughter-in-law, lived on a portion of the property. Cecil built a small home on a two-to-five acre tract in 1940.

In January 1954, Ed and Lourinda deeded the property by general warranty deed to Cecil's brother and defendant's uncle, Paschall B. Jones ("Paschall"). The deed to Paschall reserved a life estate for Ed and Lourinda. In January 1958, Ed and Lourinda deeded their life

interest to Paschall by warranty deed. Each conveyance was properly recorded. There was no evidence of whether or not Cecil and Alease had Paschall's permission to live on the property after Paschall acquired title.

On 3 June 1965, Paschall and his wife transferred their entire interest in the property to Carl and Eleanor Pegg ("the Peggs") by a duly recorded warranty deed. On 23 September 1965, the Peggs executed a deed to Cecil and Alease. The deed was recorded on 28 September 1965 and purported to convey a life estate in a two-acre tract of the property to "Cecil Jones and wife."

At some point thereafter in 1965, Carl Pegg ("Carl") came over to Cecil and Alease's home to discuss this arrangement. Cecil retrieved a loaded shotgun, pointed it at Carl, and ordered him to leave the property. Carl left behind a recorded copy of the deed purportedly granting Cecil and Alease a life estate in the two-acre tract the Peggs had surveyed out of the fifty-acre tract.

Thereafter, Cecil and Alease continuously lived upon, paid taxes, and raised their children on the property until their deaths in 1993 and 1994 respectfully. In 1986, Cecil and Alease added a mobile home to the property to replace the residence they had built in 1940.

Since Alease's death in 1994, defendant has continuously occupied the two acres described in the survey and the life estate deed from the Peggs. The trial court found as a fact that defendant has held the two-acre tract adversely to plaintiff since 1994. Defendant's family paid taxes on the property from 1994 through 2000, and defendant paid the taxes on the two-acre tract in 1998, 1999, and 2000. Sometime after 19 March 2001, plaintiff learned of the deaths of Cecil and Alease and also began paying taxes on the property. Plaintiff filed this action on 11 May 2004.

On 21 June 2005, the trial court entered an order, which contained a conclusion of law stating "[t]he [d]efendant, Ervin Jones, has occupied the property without the consent or permission of the [p]laintiff since that time, but has not satisfied the statutory time period sufficient to acquire title by virtue of adverse possession[]" and decreed (1) plaintiff "has and is hereby recognized to have, fee simple title to the two acre tract in question in this litigation[]" and (2) defendant "and any and all other parties unnamed and unknown who may occupy the property are hereby ordered to vacate the property forthwith." Defendant appealed to this Court.

In an unpublished opinion entered 1 August 2006, this Court vacated the trial court's order and remanded the matter for further findings of fact. *Pegg v. Doe*, 178 N.C. App. 742, 632 S.E.2d 600. This Court mandated that the trial court make specific findings of fact on:

> (1) whether Cecil and Alease began adversely possessing the tract at issue on or before the date upon which the Peggs received title to the tract at issue, and (2) whether Cecil and Alease rejected the Peggs' attempt to convey a life estate by forcing Carl Pegg to leave the property.

*Id.* (slip op. 6-7). Upon remand, the trial court concluded that plaintiff was the fee simple owner of the property.

Defendant, in essence, presents one issue for this Court's review: Whether the trial court erred in determining that defendant had not established fee simple ownership in a two-acre tract of land by adverse possession.

"The standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.'" *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (2002) (quoting *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163 (2001)). "The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary." *Resort Realty of the Outer Banks, Inc. v. Brandt*, 163 N.C. App. 114, 116, 593 S.E.2d 404, 408 (2004). Simply stated, where the trial court's findings of fact are supported by competent evidence, and the findings of fact, in turn, support the trial court's conclusions of law, the decision of the trial court will be affirmed. This Court will not reweigh the evidence.

## I.

[1] Defendant argues that the trial court erred in concluding that he was not the fee simple holder of a two-acre tract of land in Orange County, North Carolina, by way of adverse possession. We disagree.

Generally,

> no action to recover possession of real property may be maintained when the party in possession, the defendant[] in the action, or those under whom the defendant claims has been in possession of the property under known and visible lines and boundaries *adverse to all other parties for 20 years.*

**PEGG v. JONES**

[187 N.C. App. 355 (2007)]

*Kennedy v. Whaley*, 55 N.C. App. 321, 326, 285 S.E.2d 621, 624 (1982) (emphasis added); *see also* N.C. Gen. Stat. § 1-40 (2005). If the property had been possessed under color of title, however, the statutory time limit is only seven (7) years. N.C. Gen. Stat. § 1-38 (2005). Here, defendant makes no argument that he took the property under color of title, so the provisions of N.C. Gen. Stat. § 1-40 are applicable.

In the instant case, the trial court stated in its judgment that there was no evidence presented as to one of the two questions on which this Court remanded for findings of fact.[1] The trial court did not specifically state on which of those two questions it lacked evidence to make findings of fact. Our review of the judgment, however, makes it clear that the trial court was referring to the first question.[2] Due to this lack of finding, the dissent would vacate a judgment and remand for further proceedings to make findings of fact on an issue for which no evidence had been presented. Because a finding of fact on that issue is not necessary to the outcome of this case, we disagree with the dissent's reasoning and affirm the ruling of the trial court.

As to the first question, the date on which the Peggs took title to the property was 3 June 1965. The dissent is correct that the trial court made no specific finding as to whether Cecil and Alease began adversely possessing the tract on or before that date. However, the trial court made a finding of fact that defendant presented no evidence that he or his predecessors ever adversely possessed the property before 3 June 1965. Specifically, the trial court stated: "There is no evidence that Cecil Jones ever occupied the property hostilely or adversely to the interest of his parents or adversely to Paschell Jones after he had been deeded the property." Although the finding does not specify the 3 June 1965 date, Paschell Jones and Cecil's parents were the owners of the property up until 3 June 1965, so if the property was never held adversely against Jones or Cecil's parents it necessarily means that it was not held adversely before 3 June 1965.

Additionally, the trial court made a finding of fact that there was no adverse possession after the incident in which Cecil pointed a

---

1. Specifically, the trial court ruled that "one of the two questions which the Court of Appeals stated did not have sufficient findings of fact and mandated the [c]ourt to find facts with said issue even though there was no evidence presented during trial which related to that issue the [c]ourt therefore FINDS THE FOLLOWING FACTS from the evidence or from the absence of evidence as the case may be[.]"

2. The trial court made a specific finding of fact as to the second question: "This [c]ourt does not infer that the act of pointing a gun and telling Carl Pegg to get out means that Cecil Jones considered that he owned any property in fee simple or that that message was communicated to Dr. Pegg."

loaded shotgun at Carl Pegg in 1965. Specifically, the trial court stated that it did "not infer that the act of pointing a gun and telling Carl Pegg to get out means that Cecil Jones considered that he owned any property in fee simple or that that message was communicated to Dr. Pegg." Therefore, under the facts found by the trial court, the longest defendant and his predecessors could have held the property adversely would have been from 3 June 1965 up until the gun incident occurring later in 1965. Thus, at most, defendant's predecessors could have held the property adversely for less than one year. Under N.C. Gen. Stat. § 1-40, the statutory time period for adverse possession is twenty (20) years.

Accordingly, even if we assume that Cecil and Alease were holding the property adversely on 3 June 1965, and that the altercation with the shotgun occurred on 31 December 1965, the trial court's finding of fact that there was no adverse possession from the shotgun incident until 1994 necessarily defeats defendant's claim of adverse possession.

The finding that defendant and/or his predecessors did not meet the hostility requirement for adverse possession after the 1965 shotgun incident until 1994 is also supported by competent evidence. Sometime after the incident, defendant's mother, Alease, expressed an interest in having others look at the deed left by Carl Pegg. Yet there is no evidence that defendant's parents thereafter communicated with the Peggs to disclaim the life tenancy or otherwise gave notice that they were rejecting the Peggs' permission to possess the two-acre tract. The deed granting defendant's parents a life estate in the property was also recorded in Book 203 at Page 788 of the Orange County Registry on or about 28 September 1965. Additionally, plaintiff submitted an affidavit to the trial court that stated that defendant himself had never asserted to her that he owned the property or was holding it adversely at any point. Moreover, Cecil and Alease acknowledged their limited life interest in the real estate in January 1986 and December 1992 on two separate deeds of trust and on a deed of easement in November 1992. All three documents were notarized.

The dissent attempts to use these documents to support a conclusion that Cecil and Alease were "actually, continuously, and exclusively" occupying the land in question. The document executed in January 1986, however, states that Cecil and Alease have "[a] life estate for the lives of the parties[.]" The December 1992 document states that their interest "consist[s] of a life interest[.]" Finally, the November 1992 document recognizes that Cecil and Alease "are the

owners of a life estate" in the property. Accordingly, this evidence fails to aid defendant's efforts to establish adverse possession.

While the incident with the shotgun is some evidence as to hostility, the evidence discussed above is competent to support the trial court's finding of fact that defendant's parents were not holding the property adversely against plaintiff in 1965. Finally, the payment of taxes by defendant and his family does not provide any evidence as to hostility in this case because "life tenant[s] ha[ve] the obligation to list and pay taxes on the property." *Thompson v. Watkins*, 285 N.C. 616, 620, 207 S.E.2d 740, 743 (1974) (citing N.C. Gen. Stat. §§ 105-302(c)(8); 105-384). Accordingly, that finding of fact is binding on appeal. *Brandt*, 163 N.C. App. at 116, 593 S.E.2d at 408.

After a determination that the findings of fact are binding on this Court, we look only to determine whether those findings support the trial court's conclusions of law. *Id.* In this case, the trial court made a conclusion of law that defendant did not adversely possess the property in question. In order to obtain property by adverse possession, the party making such a claim must be "adverse[] to all other persons[.]" N.C. Gen. Stat. § 1-40. Thus, the trial court's conclusive finding of fact that neither defendant nor his predecessors were adverse from before 1965 until 1994 defeats any claim of adverse possession regardless of whether the property was held adversely from 3 June 1965 until 31 December 1965.

## II.

**[2]** Because we have already held that the trial court did not err in concluding that defendant nor his predecessors in interest held the property adversely for the requisite twenty (20) years, we need not determine whether the trial court erred in determining that neither defendant nor his predecessors in interest held the property under known and visible lines and boundaries.

## III.

In summary, we hold that the trial court did not err in awarding plaintiff fee simple title of the property in question. The trial court's order is affirmed.

Affirmed.

Judge McGEE concurs.

Judge TYSON dissents in a separate opinion.

TYSON, Judge dissenting.

The majority's opinion holds the trial court made sufficient findings of fact to support the conclusion that neither defendant nor his predecessors-in-interest held the property adversely for the requisite twenty years pursuant to N.C. Gen. Stat. § 1-40. I disagree and vote to vacate and remand for additional findings of fact and conclusions of law concerning defendant's adverse possession claim as previously mandated by this Court. I respectfully dissent.

## I. Standard of Review

"The standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.'" *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (quoting *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163, *disc. rev. denied*, 354 N.C. 365, 556 S.E.2d 577 (2001)), *disc. rev. denied*, 356 N.C. 434, 572 S.E.2d 428 (2002).

"The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary." *Resort Realty of the Outer Banks, Inc. v. Brandt*, 163 N.C. App. 114, 116, 593 S.E.2d 404, 408, *appeal dismissed and disc. rev. denied*, 358 N.C. 236, 595 S.E.2d 154 (2004) (citations and quotations omitted). "When competent evidence supports the trial court's findings of fact and the findings of fact support its conclusions of law, the judgment should be affirmed in the absence of an error of law." *Id.* The trial court's conclusions of law drawn from the findings of fact are reviewable *de novo*. *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

## II. Insufficient Findings and Conclusions on Remand

Defendant asserts the trial court failed on prior remand to make required findings of fact or conclusions of law previously mandated by this Court to address whether Cecil and Alease began adversely possessing the property "on or before" the Peggs received title from Paschall on 3 June 1965. Defendant more specifically argues the trial court failed to address or enter any findings of fact or conclusions of law on whether Cecil and Alease were adversely possessing the property *on the date* the Peggs received title and prior to the preparation of the survey or the recordation of the deed which purported to convey a life estate. I agree.

On remand, the trial court made two findings of fact on the issue of whether Cecil and Alease began adversely possessing the tract at issue *before* the Peggs received title:

9. There is no evidence presented that Cecil Jones ever occupied the property hostilely or adversely to the interest of his parents or adversely to Paschall Jones after he had been deeded the property.

10. The Court draws the logical inference from the fact that Ed and Lourinda were living on the property from 1940 until the time of their death and from the fact that they had promised Cecil and the children 5 acre tracts and orally had given Cecil 5 acres that Cecil lived on the property with the permission of Ed and Lourinda while they owned it. There is no evidence as to whether or not Cecil had the permission of Paschall Jones to live on the property when Paschall owned it.

The trial court's order is devoid of any findings regarding whether Cecil and Alease began adversely possessing the property *on 3 June 1965*, the date Paschall deeded the property to the Peggs, or the nature and extent of their claim to the property on this date and thereafter.

The majority's opinion states "the trial court's conclusive finding of fact that neither defendant, nor his predecessors, were adverse before 1965 until 1994 defeats any claim of adverse possession regardless of whether the property was held adversely from 3 June 1965 until 31 December 1965." If Cecil and Alease began adversely possessing the property on 3 June 1965, the date the Peggs took title, the issue becomes what is the effect, if any, of the subsequent survey by the Peggs or their subsequent recordation of a purported life estate on the operation of the twenty year statute of limitations required to adversely possess the property under N.C. Gen. Stat. § 1-40.

While no North Carolina cases have directly addressed this issue, it seems clear that if the life tenant repudiates the life tenancy, or otherwise takes action which would be the equivalent of an ouster of a fellow tenant in a concurrent ownership situation, he could adversely possess against the remainderman.

James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 14-19, at 668 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999). "For example, in *Morehead v. Harris*, it seems clear that our [Supreme] [C]ourt is recognizing the ability of a life tenant to

adversely possess against the remainderman if notice to the remainderman is present." *Id.* (citing 262 N.C. 330, 137 S.E.2d 174 (1964)).

The supreme courts of sister jurisdictions have addressed this issue:

> It is well established that adverse possession does not run against a remainderman until the death of the life tenant. Similarly, presumption of grant will not be acquired against a remainderman who is unable to assert his rights until an intervening life estate is extinguished and the remainderman is entitled to possession. *However, once the statute of limitations has commenced to run, no subsequent disability will arrest it.*
>
> In *Kubiszyn v. Bradley*, 292 Ala. 570, 298 So.2d 9 (1974), the Alabama Supreme Court held that *once the statutory period for adverse possession commences to run against a landowner, the running of the statutory period is not suspended by the subsequent creation of a life estate and remainders in the property.*
>
> . . . .
>
> Accordingly, we hold that *once the statutory period for adverse possession is activated, the subsequent creation of a life estate will not suspend the running of such period.*

*Miller v. Leaird*, 307 S.C. 56, 62-63, 413 S.E.2d 841, 844-45 (S.C. 1992) (internal citations omitted) (emphasis supplied). If Cecil and Alease began to adversely possess the property on or after the date the Peggs received title, the subsequent survey and creation of a life estate by the Peggs was not a "subsequent disability to arrest" or toll the running of the statutory period pursuant to N.C. Gen. Stat. § 1-40. *Id.* The majority's opinion wholly fails to address this persuasive authority from sister jurisdictions on the effect of the later filed life estate deed.

The majority's opinion also states "the finding that defendant and/or his predecessors did not adversely possess the property after the 1965 shotgun incident until 1994 is [] supported by competent evidence" and "there is no evidence that defendant's parents thereafter communicated with the Peggs to disclaim the life tenancy or otherwise gave notice that they were rejecting the Pegg's permission to possess the two-acre tract."

Defendant offered substantial evidence tending to show Cecil and Alease adversely possessed the property from 1965 to 1994. It is well-established in North Carolina that adverse possession:

consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner.

*Locklear v. Savage*, 159 N.C. 236, 237-38, 74 S.E. 347, 348 (1912). "[O]ccupying land for a residence, fencing it, farming or making permanent improvements on land are ideal methods of showing actual possession . . . " Webster, *supra* § 14-4, at 641. Here, evidence shows defendant and his parents performed many of these acts and more.

Actual Possession becomes hostile when the "use [of the property is] of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under claim of right." *Dulin v. Faires*, 266 N.C. 257, 261, 145 S.E.2d 873, 875 (1966).

On 3 June 1965, Paschall deeded the property to the Peggs. Defendant's evidence showed Cecil and Alease had made permanent improvements and were living on the property as their sole residence to the exclusion of everyone else. The Peggs did not record the deed purporting to convey a life estate to Cecil and Alease in a 2.08 acre tract the Peggs had surveyed out of the property until 28 September 1965, nearly four months after they acquired title.

This evidence tends to show the Peggs recognized Cecil and Alease had and were asserting an interest in the property and the Peggs' unilateral actions attempted to restrict and confine that interest from a five-acre fee interest to a life estate in a 2.08 acre tract. Cecil and Alease neither signed the survey nor the deed purporting to convey the life estate. Further, when the Peggs attempted to deliver this deed to Cecil and Alease, Cecil retrieved a loaded shotgun, pointed it at Carl Pegg, and stated, "he didn't want to hear nothing [Pegg] had to say, to get out of *his house* or otherwise [Cecil] was going to shoot him." (Emphasis supplied). The Peggs never returned to the property after this incident, did nothing to assert or protect their record ownership in the property, or seek to remove Cecil and Alease from the property.

Cecil and Alease actually, continuously, and exclusively occupied the land as their principle residence. In January 1986, Cecil and Alease borrowed $7,000.00 through a line of credit deed of trust to make improvements to the property and to buy a mobile home as a replacement residence. In 1992, Cecil and Alease borrowed an additional $15,000.00 for the purpose of making improvements to their new residence purchased in 1986. These improvements included adding a permanent room onto the mobile home. Finally, Cecil, Alease, and defendant paid the taxes associated with the 2.08 acre tract of property.

Upon remand, the trial court utterly failed to address and adjudicate this evidence which could support a finding and conclusion that Cecil and Alease exercised continuous, open, exclusive, actual, and notorious "acts of dominion over the land" from 1965 to 1994. *Locklear*, 159 N.C. at 237-38, 74 S.E. at 348. The trial court's order is devoid of any findings of fact or conclusions of law regarding the evidence concerning events that occurred during this time period other than the "shotgun" incident.

"[S]uccessive adverse users in privity with prior adverse users can tack successive adverse possessions of land so as to aggregate the prescriptive period of twenty years." *Dickinson v. Pake*, 284 N.C. 576, 585, 201 S.E.2d 897, 903 (1974) (citation omitted). "There is [] privity of possession between an initial adverse possessor who lived upon land with his family and the members of his family who continued to occupy the land after his death by descent." Webster, *supra* § 14-9, at 654 (citing *Vanderbilt v. Chapman*, 172 N.C. 809, 90 S.E. 993 (1916)).

The trial court's conclusion numbered 3 states, "[defendant] has occupied the two acre tract adversely since the death of his mother in 1994 he has had no color of title and has not adversely possessed said property for a sufficient time to gain title by adverse possession." If the trial court finds that Cecil and Alease adversely possessed the property on or after the date the Peggs received title and the running of the statutory period was not suspended by the subsequent survey and purported creation by the Peggs of a life estate, defendant presented sufficient evidence of tacking to satisfy the requisite statutory period of twenty years for adverse possession.

The trial court made no findings of fact and conclusions of law regarding a dispositive issue on prior remand: whether Cecil and Alease adversely possessed the property *on the date* the Peggs

received title, and their status on the property for nearly four months prior to the recordation of a deed purporting to grant them a life estate in the more than two acres the Peggs had surveyed out of the parent tract. Defendant presented substantial evidence and argument on this issue. This issue was previously mandated to the trial court to address on remand, and should be again.

## V.  Conclusion

The trial court failed to address and make required findings of fact and conclusions of law on whether Cecil and Alease were adversely possessing the property on the date the Peggs received title and failed to adjudicate and resolve factual issues raised by the evidence. The trial court's 6 October 2006 order should be vacated and remanded once again for additional findings of fact and conclusions of law concerning defendant's adverse possession claim in accordance with the previous unanimous opinion of this Court and this opinion. I respectfully dissent.